**IDC CONSTRUCTION, LLC and Century Surety Co., Plaintiffs,**

v.

**ADMIRAL INSURANCE CO., Defendants.**

No. 03–14216–CIV.

United States District Court, S.D. Florida, Fort Pierce Division.

Oct. 6, 2004.

Anna D. Torres, Esq., Powers, McNalis & Torres, West Palm Beach, FL, for Plaintiffs.

Patrick Patrissi, Esq., Lynn E. Sharon, Esq., Ritter Chusid Bivona & Cohen LLP, Boca Raton, FL, for Defendants.

## *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiffs', IDC Construction, LLC, and Century Insurance Company, Motion for Partial Summary Judgment (DE # 30).

UPON CONSIDERATION of the motion and response, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

### A. The Parties

Plaintiff IDC Construction, Inc. ("IDC"), is a Georgia limited liability company which engaged in the business of commercial general contracting and construction in Martin County, Florida. Plaintiff Century Surety Company ("Century") is a foreign insurance company authorized to do business in the State of Florida. Defendant Admiral Insurance Company ("Admiral") is a foreign insurance company authorized to do business in the State of Florida. Both Century and Admiral provided liability coverage to IDC.

This cause of action arose as a result of claims made by the Hutchinson Island Inn,

Inc. d/b/a Holiday Inn Oceanside ("Holiday Inn Oceanside"), a non-party in this action, against IDC. Holiday Inn Oceanside claims that IDC materially breached the terms and conditions of two construction contracts between the parties, resulting in property damage, consequential damages for loss of use of the property, and costs to repair the property. IDC demanded that Admiral provide coverage, and defend and indemnify all covered claims made by Holiday Inn Oceanside. Admiral advised IDC that it determined that no coverage is afforded under its policy for the claim of loss occurring at the property owned by Holiday Inn Oceanside. Mot. for Partial Summ. J. ¶ 6. The instant action ensued.

### B. The Insurance Policy

On or about October 1, 2001, Admiral issued a Commercial General Liability Policy (the "Admiral Policy"), Policy No.: A01AG11573, to IDC. Am. Compl. ¶ 9. The Admiral Policy contains the following relevant provisions:

### SECTION I —COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

### SECTION V —DEFINITIONS

13. "Occurrence" means and accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property Damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

### PRE–EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

(a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

(b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any, whichever is earlier) even if the "oc-

currence" continues during this policy period.

2. Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier). We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

### C. Procedural History

On or about April 20, 2000, IDC entered into a contract with Holiday Inn Oceanside for the purpose of performing certain repairs and renovations to the Holiday Inn Oceanside. Am. Compl. ¶ 12. After certain repairs and renovations were completed, water intrusion into various guest rooms in the Holiday Inn Oceanside occurred. As a result, Holiday Inn Oceanside has made a claim against IDC. *Id.* ¶ 13.

IDC demanded that Admiral provide coverage, defend, and indemnify all covered claims made against it by the Holiday Inn Oceanside. Mot. for Partial Summ. J. ¶ 6. Admiral agreed to share in investigative expenses until it made a coverage decision. Admiral later informed IDC and notified Century that it would no longer share in the investigative expenses of Century because it determined that the claim of loss by Holiday Inn Oceanside was not covered under the Admiral Policy. Resp. to Mot. for Partial Summ. J. at 3.

After Admiral denied coverage, Century continued to investigate the claims made by Holiday Inn Oceanside, and assumed the defense of IDC in the lawsuit which was subsequently brought by Holiday Inn Oceanside. *Id.* at 3. A demand was made by Century upon Admiral for the reasonable investigation of the losses claimed against their mutual insured and for the defense and indemnity of the insured. Mot. for Partial Summ. J. ¶¶ 7, 9.

On July 10, 2003, IDC commenced an action against Admiral in the Circuit Court of the Nineteenth Judicial Circuit in and for Martin County, Florida, *see IDC Construction, LLC and Century Surety Company v. Admiral Insurance Company,* Case No. 03–600A, seeking damages for breach of contract and contribution arising out of Admiral's denial of a claim made by IDC against the Admiral Policy. On July 31, 2003, Admiral removed this action to federal court, and on August 4, 2003, Admiral served its answer to the complaint.

On November 13, 2003, Holiday Inn Oceanside filed a complaint in the Circuit Court for the Nineteenth Judicial Circuit for Martin County, Florida, against IDC for property damage caused by IDC. *See Hutchinson Island Inn, Inc. d/b/a Holiday Inn Oceanside v. IDC Construction, LLC,* Case No. 03–1004CA (Fla.Cir.Ct.) (the "Underlying Lawsuit"). *See infra* Sec. I.D.

On December 19, 2003, IDC and Century moved this Court for leave to file an Amended Complaint and Petition for Declaratory Relief ("Amended Complaint"). The Amended Complaint contained four counts: (1) breach of contract by IDC against Admiral for failing to investigate, defend and/or indemnify IDC as a result of the claims against it by Holiday Inn Oceanside; (2) contribution by Century against Admiral for failing to share in the investigation and defense costs of Century on behalf of IDC as a result of the claims by Holiday Inn Oceanside; (3) declaratory relief by IDC against Admiral seeking a declaration that Admiral must defend and

indemnify IDC as a result of the Underlying Lawsuit; and (4) declaratory relief by Century against Admiral seeking a declaration that IDC's claim is covered under the Admiral Policy and that Admiral is obligated to share in the investigation, defense and indemnification with Century of IDC for losses and claims asserted in the Underlying Lawsuit. *See* Am. Compl.

In the instant motion, IDC and Century have moved for partial summary judgment as to the counts of the Amended Complaint seeking declaratory relief. Specifically, IDC claims: (1) an insurer's duty to defend depends upon the allegations in the complaint, and the Underlying Lawsuit alleges damages that are covered by the Admiral Policy; (2) an insurer's duty to assume its share of the defense and indemnification of IDC is covered by the Admiral Policy; (3) the Admiral Policy is unambiguous, therefore no genuine issue of material fact exist. *See* Mot. for Partial Summ. J.

### D. The Underlying Complaint

In the Underlying Complaint, Holiday Inn Oceanside claims that IDC materially breached the terms and conditions of the parties' July 23, 1999 contract (the "1999 Contract"). In the 1999 Contract, IDC was required to perform repairs and construct and install, inter alia, a new truss roof system on the buildings owned by Holiday Inn Oceanside. *See* Underlying Compl. ¶ 9. Holiday Inn Oceanside claims that IDC breached the 1999 Contract by: (a) failing to install runoff scuppers on the main roof; (b) improperly installing roofing materials causing sagging and rippling; (c) improperly installing drain scuppers that do not drain the flat roof; (d) failing to properly strap or fasten metal roofing; (e) leaving openings and gaps in metal roofing; (f) improperly installing the flat roof causing or allowing leaks; and (g)

installing a metal roof that rusted and deteriorated. *Id.* ¶ 10. Holiday Inn Oceanside alleges that as a direct and proximate result of IDC's breach of the 1999 Contract, it has been damaged in excess of $15,000 for the cost and repair of the roofing components and resulting damage to other portions of the building. *Id.* ¶ 11.

The Underlying Complaint also alleges that IDC materially breached the terms and conditions of the parties' May 9, 2000 contract (the "2000 Contract"). In the 2000 Contract, IDC was required to perform repairs and construct and install, inter alia, an Exterior Insulating Foam and Stucco System ("EIFS"), sliding glass doors, and concrete repairs on the buildings owned by Holiday Inn Oceanside. *Id.* ¶ 17. Holiday Inn Oceanside claims that IDC breached the 2000 Contract by: (a) failing to properly install sliding doors and frames resulting in water intrusion, mold, mildew, and damages to the interior components of the building; (b) improperly constructing and/or installing storefront wall framing, vapor barrier and insulation; (c) improperly sealing around air conditioning boxes resulting in water intrusion, mold and mildew; (d) improperly leaving unsealed electrical penetrations in party walls resulting in water intrusion, mold and mildew; (e) improperly leaving openings and penetrations through the EIFS at faux rail fasteners resulting in water intrusion, mold and mildew; (f) failing to properly slope or seal concrete slab extensions outside the sliding doors; (g) failing to properly construct and/or install sealant joints between EIFS and door frames and air conditioners resulting in water intrusion, mold and mildew; (h) failing to properly construct and/or install terminations and sealant joints where the EIFS joins dissimilar materials; (i) failing to properly align or backwrap EIFS insulation boards and penetrations; and (j) improperly allowing voids, openings and defects in con-

crete restoration of slabs resulting in water intrusion, mold and mildew. *Id.* ¶ 18. Holiday Inn Oceanside alleges that as a direct and proximate result of IDC's breach of the 2000 Contract, it has been damaged in excess of $500,000 for the cost to repair the defective construction; cost to repair and/or replace other property damaged including drywall, carpeting, furnishings and other property damaged as a result of water intrusion; consequential damages for loss of use of the hotel property; cost to remove water; mold and mildew and remediate all mold and mildew contamination at the hotel property; and engineering and architectural fees. *Id.* ¶ 19.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces genuine issue of material fact, then the court should not grant summary judgment." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir.1995). Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In applying this standard, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Id.*

However, the non-moving party may not "rest upon the mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of scintilla of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The non-moving party must raise significant probative evidence sufficient for a jury to find in their favor. *See LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir.1998). In fact, "the plain language of Rule 56(c) mandates entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure to present proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

In a declaratory judgment action, "if the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured." *Northland Cas. Co. v. HBE Corp.,* 160 F.Supp.2d 1348, 1357–58 (M.D.Fla.2001) (citing *Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.,* 847

F.Supp. 947, 949–50 (M.D.Fla.1994)). "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Id.* (citing *Talat Enter., Inc. v. Aetna Life & Cas.*, 952 F.Supp. 773 (M.D.Fla.1996)).

### III. INSURANCE LAW

#### A. General Principles

■ The construction of ambiguities in an insurance policy is a question of law. *State Farm Fire & Cas. Co. v. Metro. Dade County*, 639 So.2d 63, 65 (Fla. 3d DCA 1994) (citing *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla.1985)). "[P]olicy provisions which tend to limit liability must be construed liberally in favor of the insured against the insurer," however, "where the language of a policy is clear and unambiguous on its face, the policy must be given full effect." *Id.* (citations omitted). Further, "[i]n the absence of ambiguity ... it is the function of the court to give full effect to the insurance contract as written." *Id.* (citing *United States Fire Ins. Co. v. Morejon*, 338 So.2d 223, 225 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 426 (Fla.1977); *Rigel v. Nat'l Cas. Co.*, 76 So.2d 285 (Fla.1954)). Where a policy is ambiguous, the court will construe the policy in favor of coverage and against the insurer who drafted the policy. *Northland Cas. Co.*, 160 F.Supp.2d at 1358.

In an action to determine insurance coverage, the insured has the burden of proving that a claim against it is covered by the insurance policy. The insurer has the burden of proving an exclusion to coverage. *Id.* (citations and quotations omitted).

#### B. Exclusions

■ When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast solely and entirely within the policy exclusions and are subject to no other reasonable interpretation. Further, exclusionary clauses are generally disfavored, so courts construe any ambiguity in exclusionary language strictly against the insurer. *Id.* at 1359 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997)).

In this case, the Admiral Policy contains a "Pre–Existing Damage Exclusion" (the "Exclusion"), which excludes coverage for "[a]ny damages arising out of or related to ... 'property damage' ... (a) which first occurred prior to the inception date of [the Admiral Policy] ... or (b) which are, or alleged to be, in the process of occurring as of the inception date of [the Admiral Policy] ... even if the 'occurrence' continues during [the Admiral Policy] period." Further, any damages "which are in the process of settlement, adjustment or 'suit' as of the inception date of [the Admiral Policy]" are excluded from coverage. As to the duty to defend, Admiral has "no duty to defend [IDC] against any loss, claim, 'suit', or other proceeding alleging damages arising out of or related to ... 'property damage' to which [the Exclusion] applies."

While Plaintiffs argue that the allegations in the Underlying Complaint implicate potential coverage, Admiral claims that the allegations fall within the Exclusion, and therefore are not covered by the Admiral Policy.

#### C. Duty to Indemnify and Duty to Defend

The Admiral Policy provides that Admiral will "pay those sums that [IDC] be-

comes legally obligated to pay as damages because of ... 'property damage' to which [the Admiral Policy] applies." Admiral Policy, Sec. I, para. 1(a). As for the duty to defend, Admiral has "the right and duty to defend [IDC] against any 'suit' seeking those damages." *Id.* Further, the Admiral Policy specifies that Admiral has "no duty to defend [IDC] against any 'suit' seeking damages for ... 'property damage' to which [the Admiral Policy] does not apply." *Id.*

The duty to indemnify is separate and distinct from the duty to defend. *Northland Cas. Co.*, 160 F.Supp.2d at 1360 (citing *Western World Ins. Co., Inc. v. Cigna Corp.*, 718 F.Supp. 1518, 1520 (S.D.Fla. 1989)). The duty to defend, which is broader than the duty to indemnify, "depends solely on the allegations in the complaint filed against the insured." *Id.* (citing *Tropical Park. Inc. v. United States Fid. & Guar. Co.*, 357 So.2d 253, 256 (Fla. 3d DCA 1978)); *see also Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So.2d 947, 949 (Fla. 2d DCA 2003); *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1306–1307 (Fla. 1st DCA 1992). When construing the duty to defend, the court considers whether the allegations of the complaint implicate potential coverage. *Northland Cas. Co.*, 160 F.Supp.2d at 1360 (citing *Tropical Park. Inc.*, 357 So.2d at 256). "If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Grissom*, 610 So.2d at 1307. Consequently, an insurer may be required to defend a suit even if the true facts later show that there is no coverage. *Id.* (citing *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So.2d 611 (Fla. 4th DCA 1982)).

In contrast to the duty to defend, the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means. *Northland Cas. Co.*, 160 F.Supp.2d at 1360 (citing *Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 883 F.2d 1092, 1099 (1st Cir.1989); *Beaudette, Inc. v. Sentry Ins.*, 94 F.Supp.2d 77, 100 (D.Mass.1999)). Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify. *Id.* (citing *Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.)*, 152 B.R. 661 (Bkrtcy. M.D.Fla.1993)). Thus, "whereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." *Id.* An insurer's duty to indemnify is dependent on the outcome of a case, therefore any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim. *Id.* (citations omitted). A court can assess the duty to indemnify prior to a conclusion on the merits in the underlying litigation only if the allegations in that complaint could, under no circumstances, trigger the duty to indemnify. *Id.*

## IV. DISCUSSION

In the Amended Complaint and Petition for Declaratory Relief, IDC seeks a declaration that: (1) the Admiral Policy requires Admiral to indemnify IDC, or any other party for claims asserted in the Underlying Complaint; and (2) that Admiral has a duty to defend IDC against claims asserted in the Underlying Complaint. Am. Compl. ¶ 38. Century seeks a declaration that the Admiral Policy issued to IDC requires Admiral to share in the investigation, defense and indemnification of IDC's losses asserted in the Underlying Complaint. *Id.* ¶ 52. IDC and Century's instant motion seeks summary judgment

on these declaratory claims. *See* Mot. for Partial Summ. J.

## A. Duty to Defend

IDC and Century claim that the allegations in the Underlying Complaint trigger Admiral's duty to defend and its duty to assume its share of the defense under the Admiral Policy. *Id.* at 5–8. Plaintiffs claim that because Holiday Inn Oceanside alleges damage to property other than the improperly constructed work agreed to be performed by IDC, there is a potential for coverage, resulting in a corresponding duty to defend under the Admiral Policy. *Id.* at 7. Specifically, Plaintiffs point to the portions of the Underlying Complaint seeking damages for "the cost of repair and replacement of the roofing components and resulting damage to other portions of the buildings," and "the cost to repair the defective construction; cost to repair and/or replace other property damaged including drywall, carpeting, furnishings and other property damaged as a result of water intrusion; consequential damages for loss of use of the hotel property; cost to remove water; mold and mildew and remediate all mold and mildew contamination at the hotel property; and engineering and architectural fees." *Id.* (citing Underlying Complaint ¶¶ 11, 19). Plaintiffs allege that because these portions of the Underlying Complaint allege damages to property other than improperly constructed work agreed to be performed in the 1999 and 2000 Contracts, there is a potential for coverage under the Admiral Policy. *Id.*

Admiral argues that the Underlying Complaint alleges property damage that was known and first occurred prior to the inception date of the Admiral Policy, and is therefore excluded coverage under the Exclusion. Resp. to Mot. for Partial Summ. J. at 5. Under the Admiral Policy, an "occurrence" means and accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Id.* at 5 n. 2 (citing Admiral Policy, Sec. V, para. 13). Accordingly, argues Admiral, any "property damage" which first occurs before the Admiral Policy period, then continues thereafter, would be excluded by the Exclusion. *Id.* Admiral contends that because all of the damage alleged in the Admiral Policy sprang from material breaches of the 1999 and 2000 Contracts, none of the property damage first occurred during the Admiral Policy period, which is a necessary condition for coverage. *Id.* at 5–6.

### 1. Duty to Defend IDC

■ Because Admiral relies on the Exclusion to deny coverage to IDC, it has the burden of demonstrating that the allegations in the Underlying Complaint are cast solely and entirely within the Exclusion, and are subject to no other reasonable interpretation. Admiral has provided substantial evidence, including affidavits, letters, memoranda, photographs, expert analysis and reports, indicating that at least some, if not all, of the damage alleged in the Underlying Complaint falls within the Exclusion. *See* Resp. to Mot. for Partial Summ. J. (exhibits). However, in applying the applicable case law, when determining whether Admiral has a duty to defend, this Court must look "solely on the allegations in the complaint filed against the insured," *Northland Cas. Co.*, 160 F.Supp.2d at 1360. Here, at least to the extent that it does not specify the exact date when the damages first occurred, the Underlying Complaint "alleges facts partially within and partially outside the coverage of the policy," *Grissom*, 610 So.2d at 1307. Therefore, because the allegations of the Underlying Complaint implicate potential coverage, Admiral is required to defend IDC in the underlying suit, even

though it may later be determined that no coverage exists.

### 2. Duty to Assume Its Share of the Defense

In addition to IDC's claim for a declaration that Admiral has a duty to defend, Century seeks a declaration that the Admiral Policy issued to IDC requires Admiral to share in the investigation, defense and indemnification of IDC's losses asserted in the Underlying Complaint. Am. Compl. ¶ 52. However, the parties have not briefed the Court on whether Century, who is not a party to the Admiral Policy, can enforce a provision of a policy between IDC and Admiral. Further, Century has not cited case law in support of its claim for declaratory relief. Therefore, the Court will not grant summary judgment as to Century's claims for declaratory relief. However, as explained *supra*, Admiral does have a duty to defend IDC in the underlying lawsuit.

### B. Duty to Indemnify

█ Finally, Plaintiffs' Motion for Partial Summary Judgment seeks a declaration that Admiral has a duty to indemnify IDC for losses it may suffer in the underlying lawsuit. Mot. for Partial Summ. J. at 7–10. This Court can assess the duty to indemnify prior to a conclusion in the underlying lawsuit only if it was clear that the allegations in the Underlying Complaint could, under no circumstances, trigger the duty to indemnify. *Northland Cas. Co.*, 160 F.Supp.2d at 1360. Admiral has presented substantial evidence that the damages alleged in the Underlying Complaint first occurred before the Admiral Policy period. However, it is question of fact whether the damages alleged in the Underlying Complaint are the result of "continuous or repeated exposure to substantially the same general harmful conditions" that first occurred before the policy period, or a separate occurrence that first happened during the Admiral Policy period. The Court cannot resolve questions of fact on a motion for summary judgment, and here there is a genuine issue of material fact remaining as to whether the damages first occurred before, or during, the policy period.

In conclusion, Plaintiffs have provided no authority for their contention that Admiral has a present duty to indemnify. Any declaration as to the duty to indemnify is premature unless there has been a resolution in the underlying lawsuit. *Northland Cas. Co.*, 160 F.Supp.2d at 1360. As this Court is not aware of any resolution in *Hutchinson Island Inn, Inc. d/b/a Holiday Inn Oceanside v. IDC Construction, LLC*, Case No. 03–1004CA (Fla. Cir.Ct.), Admiral has no present duty to indemnify IDC.

## V. CONCLUSION

Based on the foregoing discussion, it is

ORDERED AND ADJUDGED that Plaintiffs', IDC Construction, LLC, and Century Insurance Company, Motion for Partial Summary Judgment (DE # 30) is GRANTED IN PART, and DENIED IN PART. Summary judgment is granted as to IDC's claim seeking a declaration that Admiral has a duty to defend IDC against claims asserted in Underlying Complaint. Summary judgment is denied as to IDC's claim seeking a declaration that the Admiral Policy requires Admiral to indemnify IDC, or any other party for claims asserted in the Underlying Complaint, and as to Century's claim seeking a declaration that the Admiral Policy issued to IDC requires Admiral to share in the investigation, defense and indemnification of IDC's losses asserted in the Underlying Complaint.