368 So.2d 634 (1979)
AUTO-OWNERS INSURANCE COMPANY, a Michigan Corporation, Appellant,
v.
Elizabeth S. YATES, Appellee.
No. 78-49.
District Court of Appeal of Florida, Second District.
March 16, 1979.
*635 H. Vance Smith and M.W. Graybill, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
W. Nelson Rivers, Tampa, for appellee.
GRIMES, Chief Judge.
This is an appeal from a summary judgment declaring the applicable limits of certain uninsured motorist coverage.
Appellee (Ms. Yates) was severely injured while a passenger in her own car on January 21, 1977. The limits of liability coverage available from the other vehicle's insurer were $20,000/$40,000. Ms. Yates submitted a claim to appellant (Auto-Owners), her own insurance carrier, for underinsured motorist coverage. Auto-Owners denied the claim because the stated limits of uninsured motorist coverage on the policy issued to Ms. Yates were $15,000 per person/$30,000 per occurrence. Ms. Yates sued for declaratory relief.
Discovery developed the following pertinent facts: In 1975, the Cadillac in which Ms. Yates was later injured was insured by Unigard Mutual Insurance Company (Unigard) along with several other vehicles owned by Ms. Yates and her husband. Ms. Yates divorced her husband in the summer of 1976 and the Cadillac became her property as a result of the divorce. The Unigard insurance had been handled by the Allied Insurance Agency, and Hugh Harless was the Allied employee who was directly involved in placing the coverage. Harless left Allied in December of 1975 to establish his own insurance agency. When Harless learned that Ms. Yates had divorced, he contacted her about handling her insurance needs. As a result of their conference, she authorized him to place insurance for her on the Cadillac and some other property which she owned.
Harless was an authorized agent for several insurance companies, including one which wrote automobile liability insurance for commercial vehicles. However, he was not then an agent for any company writing insurance on family vehicles. Until he built up his business to the point where he could become an authorized agent for a company writing family automobile liability coverage, he obtained family automobile coverage for his customers from the Elmer Johnson insurance agency. This agency was an authorized agent for several companies writing this type of coverage, including Auto-Owners. Accordingly, Harless talked to Elmer Johnson of the Johnson agency about insurance on Ms. Yates' Cadillac, and he obtained from Johnson a blank Auto-Owners' insurance application. He took the application form to his office, filled it out, and returned it to Johnson, requesting liability insurance of $100,000/$300,000 and uninsured motorist coverage of $15,000/$30,000. Unbeknownst to Johnson, Harless signed Ms. Yates' name to the application in the two places indicated for the signature of the insured. The application contained a provision just above one of the signatures which stated that under Section 627.727 of the Florida Statutes the company was required to offer uninsured motorist coverage limits equal to the bodily injury limits unless specifically lower limits were requested. There was a check next to the line which stated that the applicant requested uninsured motorist coverage in the reduced limits of $15,000/$30,000.
The Auto-Owners policy was issued effective July 10, 1976, in Ms. Yates' name with the limits as requested by Harless. The policy was sent to Harless who mailed it to Ms. Yates. She sent the premium to Harless. He forwarded the premium to Johnson and received a portion of the premium back for his services. The policy was renewed by endorsement effective January 10, 1977, with the same limits. Once again, Harless and the Johnson agency shared the premium.
Prior to July 10, 1976, Harless had obtained other insurance policies from Auto-Owners *636 through Johnson for his customers, and on some of these occasions he had signed his customers' names on the applications. Johnson was unaware that Harless sometimes signed the applications for his customers.
Ms. Yates and Harless differed with respect to their recollections of the discussion between them concerning the amount of uninsured motorist coverage to be included in the policy. Harless testified that he told her she could obtain uninsured motorist coverage in limits up to the amount of her liability limits but that it would cost more than the minimum uninsured motorist coverage which she previously had with Unigard. He said she told him that she wished to maintain the same limits which she had with Unigard, but that she wanted a price quote for the whole package. He then obtained a price quote from Johnson and relayed the information to Ms. Yates. She authorized him to obtain the policy on that basis. Ms. Yates recalled no specific discussion with Harless about uninsured motorist coverage, but she testified that she told him she wanted the "fullest coverage." She said that she did not authorize him to sign her name on the application and that she had no idea that he had done so.
Both parties moved for summary judgment. The trial court concluded that Harless had provided Ms. Yates with no information regarding the selection of uninsured motorist coverage and that he had signed the insurance application without authority from Ms. Yates. The court further found that all of the acts of Harless were the acts of the Auto-Owners and that Ms. Yates had not rejected the uninsured motorist coverage in an amount equivalent to her liability limits to which she was otherwise entitled under Section 627.727(2), Florida Statutes (Supp. 1976). The court ruled that the uninsured motorist coverage limits in the Auto-Owners policy applicable to Ms. Yates' injuries were $100,000/$300,000.
Auto-Owners argues (1) that Harless was an insurance broker who acted as an agent for Ms. Yates rather than for Auto-Owners, and (2) that, in any event, there was a material issue of fact as to whether Ms. Yates requested Harless to obtain the higher coverage. Because we agree with Auto-Owners on the first point, there is no need to consider the second.
The distinction between an insurance broker and an insurance agent is explained in 3 Couch on Insurance 2d, § 25:92 (1960):
An "insurance broker" is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by himself; whereas an "insurance agent" is one who represents an insurer under an employment by it. Whether a person acts as a broker or agent is not determined by what he is called but is to be determined from what he does. In other words, his acts determine whether he is an agent or a broker.
In discussing the status of an insurance broker, 16 Appleman, Insurance Law and Practice § 8726 (1968) states:
A broker is ordinarily defined as being one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company, but having secured an order either places the insurance with a company selected by the insured, or, in the absence of such selection, with a company selected by the broker. He enjoys no fixed or permanent relationship to an insurer but rather holds himself out for employment by the general public. And a broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from the ordinary insurance agent who is employed by an insurance company to solicit and write insurance in the company.
The general rule that an insurance broker is the agent of the insured rather than of the insurer is not altered simply because the broker receives his compensation out of the premium. Thus, 16 Appleman, supra, states at § 8727:

*637 The mere fact that the insurance broker receives his compensation from the insurer, such as by a retention of all or part of the commissions paid from premiums received from the insured, cannot change his relation from that of agent for the policyholder to that of an agent for the insurance company. To hold otherwise would in almost every case alter the general rule, since insurance brokers are compensated out of premiums, making no additional charge for their services to the insured except in rare instances.
Florida law has followed the principles set forth in the treatises. In Centennial Insurance Company v. Parnell, 83 So.2d 688 (Fla. 1955), the Parnells dealt with an insurance agent named Conklin in order to obtain insurance coverage for their boat. Conklin obtained some rates from Centennial, and the Parnells authorized him to obtain coverage for a year. Conklin, in fact, only obtained thirty days' coverage, and the Parnells' boat sank beyond the thirty day period. In the trial court the Parnells successfully contended that Conklin was the agent of Centennial. On appeal the supreme court reversed.
Not only did Conklin have no actual authority to bind Centennial to the risk, he had none of the indicia of apparent authority to do so  no application forms, literature, letterheads, calling cards, or anything else. The Parnells did not sign an application form for the insurance, nor did they testify that Conklin held himself out to be an agent of Centennial, although they said he told them he could "put" or "place" the insurance with Centennial on a fleet policy basis. There was, then, no showing of an actual or apparent authority on the part of Conklin to enter into an oral contract of insurance on behalf of Centennial... .
Centennial Insurance Company v. Parnell, supra at 690.
Two years later the Fifth Circuit Court of Appeals in Peddy v. Pacific Employers Insurance Company, 246 F.2d 306 (5th Cir.1957), applied Florida law on this subject. In that case, Allsopp was the appointed insurance agent of several companies and had the authority to bind risks, but he was not the agent of Pacific Employers. Allsopp solicited the automobile liability coverage on Peddy's cars and trucks. At the time of the solicitation, Allsopp had no particular company in mind but he contemplated placing the business, if he procured it, through Bailey, an authorized agent of Pacific Employers. Allsopp obtained a rate quotation from Bailey which he submitted to Peddy; it was accepted by Peddy. Bailey then wrote the policy based on information furnished by Allsopp concerning the vehicles to be covered. Allsopp received the policy and forwarded it to Peddy. Following delivery of the policy, Peddy informed Allsopp that his son owned a jeep which he wished to insure. Allsopp told Peddy that the jeep would be fully covered from then on; however, he failed to properly inform Bailey as to the ownership of the jeep. Later, when the jeep was involved in an accident, there was a lack of coverage due to Allsopp's omission. Pacific Employers obtained a summary judgment on the basis that Allsopp was not its agent. The court of appeals affirmed and said:
Allsopp was a broker. He did not have, at the time of the negotiations which led to the initiation of the policy by Pacific Employers any authority to represent it. He did not then know the name of the company which would issue the policy. Pacific Employers had not at that time ever heard of him. The general rule in such cases is that the broker is the agent of the insured and not of the insurer. 29 Am.Jur. 114, Insurance, § 91.
Peddy v. Pacific Employers Insurance Company, supra at 308.
Applying the law to the facts at hand, it is evident that in obtaining insurance coverage on Ms. Yates' Cadillac Harless acted as an insurance broker. He had no authority to act for Auto-Owners, and he did not hold himself out as having such authority. The fact that in the past he had placed coverage with Auto-Owners through the Johnson agency on several automobiles would not make him an agent for Auto-Owners. *638 See H & H Manufacturing Co. v. Cimarron Insurance Co., 302 S.W.2d 39 (Mo. App. 1957). There was no evidence to indicate that Johnson should have known that Harless was signing some of the application forms for his clients. Auto-Owners simply issued the policy based upon the application. It was not to blame if Harless erroneously requested the wrong uninsured motorist limits. The conflict of testimony between Ms. Yates and Harless concerning the amount of coverage is, therefore, irrelevant because Harless was her agent and she was bound by his actions.[1]
Finally, we reject the contention that it was imperative for Johnson, as a representative of Auto-Owners, to personally explain the nuances of uninsured motorist coverage to Ms. Yates. There was no reason for Johnson to have had direct contact with Ms. Yates because she was being represented by Harless, her insurance broker. Even if we were to agree with Protective National Ins. Co. of Omaha v. McCall, 310 So.2d 324 (Fla.3d DCA 1975), and Weathers v. Mission Insurance Company, 258 So.2d 277 (Fla.3d DCA 1972),[2] they would be inapplicable here because in each of those cases the insurance company knew that the named insured had not signed the uninsured motorist coverage rejection. It makes no difference that Ms. Yates says that no one discussed uninsured motorist coverage with her, because an insurance company has no duty to explain uninsured motorist coverage to an insurance applicant unless the applicant asks for an explanation. Lopez v. Midwest Mutual Insurance Company, 223 So.2d 550 (Fla.3d DCA 1969).
Auto-Owners issued the policy containing the uninsured motorist coverage limits requested on the application. The application was ostensibly signed by the insured and indicated a rejection of the higher limits. The premium was predicated upon the limits requested, and any misunderstanding concerning the amount of the limits cannot be blamed upon Auto-Owners.
The judgment for Ms. Yates is reversed, and the case is remanded with directions to enter a judgment in favor of Auto-Owners.
HOBSON and SCHEB, JJ., concur.
NOTES
[1] Ms. Yates has not argued that there are any statutes governing the licensing of insurance agents which would make Harless the agent of Auto-Owners. We note, however, that in Centennial Insurance Company v. Parnell, supra, the court held that the Florida Insurance Code did not purport to fix the scope of authority of an insurance agent as between the insurance company and third persons.
[2] See Aetna Casualty & Surety Co. v. Green, 327 So.2d 65 (Fla.1st DCA 1976), in which the First District Court of Appeal questioned the wisdom of these decisions.