584 So.2d 1068 (1991)
NUGGET OIL, INC., a Florida Corporation, Appellant,
v.
UNIVERSAL SECURITY INSURANCE COMPANY, a Tennessee Corporation, Appellee.
No. 90-1940.
District Court of Appeal of Florida, First District.
August 5, 1991.
J. Dixon Bridgers, III and Carol Ann Ruebsamen of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Pensacola, for appellant.
James M. Wilson of Harrell, Wiltshire, Swearingen, Wilson & Harrell, P.A., Pensacola, for appellee.
*1069 ALLEN, Judge.
Nugget Oil, Inc., the plaintiff below, appeals the trial court's denial of its motion for summary judgment and motion for leave to file a fourth amended complaint, and asserts as error the final summary judgment entered in favor of Universal Security Insurance Company, the defendant below. For the reasons that follow, we affirm each of the trial court's decisions.
Nugget owns approximately 50 gas stations in Florida and Alabama at which convenience items, including beer and wine, are sold. In late 1987, Nugget sought liquor liability insurance for its stores and solicited proposals for coverage from several insurance agencies, including Okaloosa Insurance Agency. On behalf of Nugget, Frank Parker of Okaloosa obtained and completed one of Universal's liquor liability insurance applications. He signed the application, obtained the signature of Nugget's President thereon[1] and sent it to Universal's agent, Bayside Underwriters, Inc., for processing. Underneath the line, "Name and Address of All Locations:" on the application form, reference was made to an attachment. Parker attached a list of Nugget stores to the application, but because he understood that Universal would not insure any of Nugget's Alabama stores, he drew a horizontal line through each of the six Alabama stores on the list, marked an "X" through them and wrote the word "Alabama" in the margin nearby. Thereafter, Nugget paid the quoted premium and Universal sent Nugget a liquor liability insurance policy. The pre-printed declarations portion of the policy provides, "In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy." Nugget's business premises were then described as convenience stores. In the space below the line, "Location of All Premises You Own, Rent or Occupy:" the words, "Various at all locations occupied by the insured" were typed.
In early 1988, Nugget informed Parker that a negligence suit had been filed against it in Alabama arising out of an alleged unlawful sale of alcohol from an Alabama Nugget location. Parker told Nugget that Universal would not defend it in the Alabama litigation because the Universal policy did not provide any coverage for Nugget's Alabama stores. Relying upon that representation, Nugget hired its own counsel, settled the Alabama negligence suit and then brought the instant action against Universal alleging, inter alia, that Universal breached its contractual duty to provide a defense or coverage for the Alabama loss. Nugget's third amended complaint also named Okaloosa Insurance Agency as a defendant, alleging, inter alia, that the agency had breached a contractual duty to procure insurance which provided coverage for the Alabama stores. Nugget's claims against Okaloosa remain pending in the trial court.
The parties' cross motions for summary judgment concerned their fundamental dispute about the scope of insurance coverage provided by the Universal policy. According to Nugget, the policy provided coverage for "all locations," a phrase susceptible of but one meaning and not limited by any attached list purporting to identify the insured locations as Nugget's Florida stores. Universal argued that Nugget's agent, Parker, applied for insurance coverage for Nugget's Florida stores only, as evidenced by the list of stores he attached to the insurance application. According to Universal, the application and its attachment are part of the contract of insurance as a matter of law. The trial court concluded that the contract of insurance should be read in conjunction with the application and that when so read, the language, "various at all locations" extended coverage to all of Nugget's Florida locations.
We agree with the trial court that the insurance contract at issue here must be read in conjunction with the application. Section 627.419(1), Florida Statutes, provides, *1070 "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." This statute has been construed to mean that "[t]he application becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance." Mathews v. Ranger Ins. Co., 281 So.2d 345, 348 (Fla. 1973). See also, Quick v. National Indem. Co., 231 So.2d 22, 25 (Fla. 4th DCA 1970) (construing § 627.0118, renumbered as § 627.419(1)); State Farm Mut. Auto. Ins. Co. v. Mallard, 548 So.2d 733, 735 (Fla. 3d DCA 1989) (when a policy is modified by inconsistent terms in the application, those terms are not disregarded, rather, the policy is construed taking them into consideration); 13A J. Appleman, Insurance Law & Practice § 7582, at 237 (rev. 1976); and Williams v. New England Mut. Life Ins. Co., 419 So.2d 766, 769 (Fla. 1st DCA 1982) (a statute in existence at the time of the making of the contract of insurance forms a part of that contract, as if it were expressly referred to in its terms). In reliance upon these authorities, we reject without discussion, Nugget's several attempts to avoid application of this rule to this case.
We also agree with the trial court's implicit finding that when the application and the policy are considered together, the contract clearly and unambiguously provides coverage to all Nugget locations in Florida. The policy language extending coverage to "all locations occupied by the insured" must not be read in isolation, instead, every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible. Mathews, 281 So.2d at 348; United States Fidelity & Guaranty Co. v. Rood Investments, Inc., 410 So.2d 1373, 1374 (Fla. 5th DCA 1982). Thus, in determining which Nugget stores were insured against liquor liability claims, we cannot ignore the identification of the insured locations found in the application. In the space provided in the application for insertion of the name and address of the insured locations, the word "Attached" appears, a clear indication that the identity of the insured locations will be found in the attachment. On the attached list of Nugget locations, horizontal lines were drawn through each Nugget store in Alabama.[2] Such lines are commonly used to convey the message that the material struck through has been purposefully deleted. We are bound to assign to contract provisions the meaning that would be attached to them by an ordinary person of average understanding. Rood Investments, 410 So.2d at 1374; Quick, 231 So.2d at 26. Moreover, a word or phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. Friedman v. Virginia Metal Prods. Corp., 56 So.2d 515, 517 (Fla. 1952). In our view, when the policy and the application are read together, as they must be, the meaning is clear: coverage is provided to "all locations occupied by the insured," meaning all Nugget locations identified in the list, except those struck through and thereby intentionally excluded.
Nugget urges our reliance upon a maxim of insurance law which provides that insurance contracts must be liberally construed against the insurer. Quick, 231 So.2d at 25. The appellant also reminds us of the corollary to that oft-stated principle: when the terms of an application cannot be reconciled with those of the policy itself, the policy terms will control unless reliance upon the application's provisions would result in greater coverage. Joseph Uram Jewelers, Inc. v. Liberty Mut. Fire Ins. Co., 273 So.2d 111, 113 (Fla. 3d DCA 1972). There is, however, an important qualification to these rules which prevents their *1071 application here. The rules urged by Nugget apply only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). As explained above, there is no ambiguity here, nor is there any inconsistency between the policy terms and the application. Thus, reliance upon the rules of construction urged by Nugget is unwarranted.
In affirming the trial court's entry of summary judgment in Universal's favor, we have not overlooked Nugget's agency arguments. Nugget contends that, because Parker conversed with Universal's agent and completed Universal's application at a time when other insurance agencies were bidding for Nugget's business, it is arguable that Parker was not yet Nugget's agent. Additionally, Nugget contends that Parker had no authority to procure insurance coverage for less than all of Nugget's stores, so even if he were Nugget's agent as a matter of law, he was acting beyond the scope of his authority when he completed Universal's application. We acknowledge the factual issue concerning the scope of Parker's authority and the cases which provide that a jury must ordinarily decide whether an agent has acted within the scope of his authority, see, e.g., Coquina, Ltd. v. Nicholson Cabinet Co., 509 So.2d 1344, 1347 (Fla. 1st DCA 1987), but we do not consider that factual dispute material to the question now before us.
In Auto-Owners Ins. Co. v. Yates, 368 So.2d 634 (Fla. 2d DCA), cert. denied, 378 So.2d 351 (Fla. 1979), Yates obtained automobile insurance, including uninsured motorist coverage, from Harless, an "insurance broker," defined as one who acts as a middleman between the insured and the insurer who is not employed by any special insurance company, but rather, is employed by, and is the agent of, the person seeking the insurance. Yates testified in her deposition that she told Harless she wanted "full coverage." Apparently in spite of this instruction, he applied for minimal uninsured motorist coverage and signed Yates' name to the application, without her knowledge. When Yates sought to recover uninsured motorist benefits in excess of what she had applied for, the insurance company denied the claim and she brought an action for declaratory relief against it. After noting that Yates had acted through an insurance broker, and that the insurer was unaware that the broker often signed applications for his clients, the court concluded that the insurer was entitled to summary judgment in its favor:
Auto-Owners simply issued the policy based upon the application. It was not to blame if Harless erroneously requested the wrong uninsured motorist limits. The conflict of testimony between Ms. Yates and Harless concerning the amount of coverage is, therefore, irrelevant because Harless was her agent and she was bound by his actions.
Yates, 368 So.2d at 638. (footnote omitted).
The analysis in Yates has been applied in several cases. See Acquesta v. Industrial Fire & Cas. Co., 467 So.2d 284, 285 (Fla. 1985) (where the husband vested his wife with apparent authority to purchase insurance for him, he was bound by her rejection of uninsured motorist coverage in a suit brought against his insurer, despite assertions that the wife had no authority to reject the coverage); Quirk v. Anthony, 563 So.2d 710, 716 (Fla. 2d DCA 1990) (where it is undisputed that the umbrella policy at issue was procured through an insurance broker, acting on behalf of the insured, the insurer was not obligated to provide coverage not requested by the broker; the broker's alleged misunderstanding of the wishes of the insured was irrelevant), approved, 583 So.2d 1026 (Fla. 1991); and Empire Fire & Marine Ins. Co. v. Koven, 402 So.2d 1352, 1353 (Fla. 4th DCA 1981) (where an insurance application contained a rejection of uninsured motorist coverage by the named insured and the application was prepared by an insurance broker, testimony suggesting that the broker may have acted in excess of his authority was irrelevant in a suit between the insured and the insurer).
*1072 We see no meaningful distinction between these cases and the present one. Parker was clearly acting on behalf of Nugget when he sought and completed an application for liquor liability insurance covering Nugget's stores. Although we are mindful that "it is often difficult to decide whether an agent is acting as a broker or an agent [for the insurer]," Quirk, 563 So.2d at 715, all of the evidence in this record supports the conclusion that Parker was Nugget's insurance broker. Accordingly, in this dispute between Nugget and Universal, Nugget's allegations that Parker exceeded the scope of his apparent authority are of no consequence.
We affirm the trial court's denial of Nugget's motion for summary judgment and its entry of final summary judgment in Universal's favor. Because we conclude that the trial court did not abuse its discretion in denying Nugget's motion for leave to file a fourth amended complaint, we affirm that order as well.
NIMMONS and BARFIELD, JJ., concur.
NOTES
[1] The evidence suggests that Nugget's President, Alan Ward, may have signed the application before it was completed by Parker.
[2] We acknowledge the dispute concerning which one of two possible lists of Nugget stores was attached to the original insurance application at the legally operative moment, but we do not find that said dispute precludes the entry of summary judgment in Universal's favor. The record establishes conclusively that whichever list was attached, horizontal lines struck through Nugget's Alabama locations.