RAMIREZ, J.
National Union Fire Insurance Company of Pittsburgh, PA, appeals the trial court’s order denying its motion for partial summary judgment and granting appellees Underwriters at Lloyd’s, London and Certain Insurance Companies’ cross-motion for summary judgment. We affirm the trial court’s decision because National Union has failed to show that Physician’s Corporation of America (“PCA”) provided Lloyd’s with the notice required under PCA’s insurance contract with Lloyd’s.

I.Factual and Procedural Background

This is a dispute between two insurers over a sizeable class action settlement paid on behalf of the insured, PCA, which was a Miami-based, publicly-traded health care company. Both Lloyd’s and National Union had issued consecutive liability policies covering PCA’s directors and officers. Lloyd’s had issued primary and excess “claims-made” director-and-officer policies to PCA for the period of April 7, 1996, to September 8, 1997. National Union’s policy covered the period of September 8, 1997, to September 8, 2003.
The class action that eventually was settled was filed in November of 1997, which fell within National Union’s coverage period. National Union argues, however, that Lloyd’s should respond for the loss because. Lloyd’s was obligated to pay for any “[ljoss resulting from any Claim first made during the policy period for a Wrongful Act” and to reimburse PCA for any loss PCA paid as indemnification “to any Directors and Officers resulting from any Claim during the policy period for a Wrongful Act.” A “Wrongful Act” was defined in the policy as “any actual or alleged error, omission, misstatement, misleading statement, neglect, breach of duty or negligent act by any of the Directors or Officers.” This would be a viable argument if Lloyd’s had been given proper written notice during the covered period. Resolution of this issue requires an examination of the policy language.
As to coverage for a potential claim, Clause VLB. of the policy provided that:
If during the Policy Period the Assureds first become aware of a specific Wrongful Act, and if the Assureds during the Policy Period give written notice to Underwriters as soon as practicable of:
1. the specific Wrongful Act, and
2. the consequences which have resulted or may result therefrom, and
3. the circumstances by which the Assureds first became aware thereof, *887 then any Claim made subsequently arising out of such Wrongful Act shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.
In 1996, PCA and Sierra Health Services began to discuss a merger. PCA’s representatives disclosed to Sierra that it was “under-reserved” by approximately $100 million, in violation of Florida’s insurance laws. The two companies nevertheless entered into a merger agreement on November 2, 1996. Two days later, PCA informed Sierra that PCA was under-reserved by $130 million. A financial review by the accounting firm of William H. Mercer, Inc., indicated that the amount under-reserved was actually $190 million. As the deficits continued to increase, the Florida Insurance Department, on February 25, 1997, filed a complaint seeking a receivership for PCA, resulting in the entry of a court order that effectively froze PCA’s business and assets.
In March 1997, Sierra rescinded its agreement with PCA and, in response, PCA brought suit in federal court seeking specific performance. . That same month, Sierra sued PCA in Delaware state court, seeking a declaration that Sierra had rightfully terminated the Merger Agreement. These suits eventually were consolidated.
On April 29, 1997, PCA sent Lloyd’s a letter crucial to our resolution of the dispute on this appeal. This letter purported to place Lloyd’s “on notice of the attached Summons & Complaint and a potential claim brought by Sierra.” PCA enclosed a copy of the summons, the Sierra complaint, and the receivership pleadings, which had been generated by the Department of Insurance. Lloyd’s responded that the purported notice presently represented only a “potential claim situation” because no director or officer of PCA had been named a defendant to the Sierra lawsuit. The response further noted: “If any director or officer of PCA is subsequently added as a defendant to the Sierra lawsuit, notice shall be deemed to have been made during the policy period when the Sierra lawsuit was first given to Underwriters.” The Sierra lawsuit eventually was settled.
As we know, in November of 1997, several shareholders lawsuits were filed against several of PCA’s directors and officers. These suits were consolidated into a federal class action entitled In Re: Physician Corp. of Am. Sec. Action (“In re PCA ”). On December 30, 1999, PCA notified Lloyd’s of In re PCA by sending it a copy of the complaint. Lloyd’s denied coverage on the grounds that: (1) In re PCA had been filed after the policy period; and (2) In re PCA involved wrongful acts different from those alleged in the Sierra lawsuit. Lloyd’s noted that no claim was ever made under the policy since the Sierra lawsuit was never amended to include directors and officers. PCA responded to Lloyd’s arguing that In re PCA arose out of the same misrepresentations regarding its financial health and its under-reserves.
In November of 2003, PCA and National Union jointly settled In re PCA for $10.2 million. Thereafter, PCA and National Union demanded reimbursement from Lloyd’s for $15.9 million ($10.2 million plus $5.7 million incurred from litigation expenses). When Lloyd’s refused to pay, PCA assigned its rights under the policy to National Union. National Union brought a declaratory action — as Assignee and on its own behalf — seeking a determination of coverage. Both sides moved for summary judgment. The trial court granted Lloyd’s motion, finding that PCA’s notice to Lloyd’s of the Sierra lawsuit was not legally sufficient to provide notice of the specif *888 ic wrongful acts at issue in In re PCA. We agree.
II. Analysis
We review the trial court’s order granting summary judgment de novo. Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. The construction of an insurance policy is a question of law for the court and may be appropriately decided on motions for summary judgment. Escobar v. United Auto. Ins. Co., 898 So.2d 952, 954-55 (Fla. 3d DCA 2005) (finding that the trial court erred in holding that the determination of whether ambiguity exists in an insurance contract is a question for the jury rather than for the court).
An insurance policy is construed as a whole according to its plain and unambiguous terms. See Nugget Oil, Inc. v. Universal Sec. Ins. Co., 584 So.2d 1068, 1070 (Fla. 1st DCA 1991); see also § 627.419(1), Fla. Stat. (2001) (“Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.”). The rule is opposite “[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.... ” Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003) (citation omitted). Since National Union does not allege that the policy is ambiguous, we give the policy’s plain terms full effect. Resolution Trust Corp. v. Artley, 24 F.3d 1363, 1367 (11th Cir. 1994). Thus, the issue in this case is whether PCA gave Lloyd’s sufficient notice to trigger the “potential claim” coverage under the policy for In re PCA.
The policy at issue in this case is a claims-made policy.[1] “A claims-made policy is a policy ‘wherein the coverage is effective if the negligent and omitted act is discovered and brought to the attention of the insurer within the policy term.’ The essence, then, of a claims-made policy is notice to the carrier within the policy period.” Gulf Ins. Co. v. Dolan, Fertig, & Curtis, 433 So.2d 512, 514 (Fla.1983) (citations omitted). Accordingly, we must decide whether PCA satisfied the policy’s notification provision by providing Lloyd’s with proper written notice. Pursuant to the policy language quoted earlier, the notice had to contain the following information: (1) the specific wrongful act; (2) the consequences which have resulted or may result therefrom; and (3) the circumstances by which PCA first became aware thereof. We conclude that PCA’s letter, which basically only enclosed the Sierra complaint and the receivership pleadings, both filed against PCA, did not place Lloyds’ on notice of the upcoming shareholder class action filed against the directors and officers of PCA.
Even if we assume that In re PCA asserted claims “arising out of’ the wrongful acts alleged in the Sierra lawsuit, we conclude that the Sierra complaint and attached receivership pleadings did not adequately describe the consequences that resulted from PCA’s wrongful acts and the circumstances of PCA’s discovery of those wrongful acts. The Sierra complaint and receivership pleadings identified only one consequence: a lawsuit brought by Sierra in connection with a proposed merger. *889 There was no reference in these materials to intimate a potential claim that might be brought against PCA’s directors and officers by its shareholders for securities law violations.
An insured is in a better position to evaluate a claim and its potential consequences. Its obligation to provide notice cannot be shifted to the insurer to speculate as to the consequences that may result from specific wrongful acts by sifting through voluminous documents identified in the Sierra complaint and receivership pleadings. Resolution Trust Corp. v. Ayo, 31 F.3d 285, 291 (5th Cir.1994) (holding that the insurer was not required to draw inferences that potential claims exist from the materials submitted by the insured). Although these materials informed Lloyd’s that PCA had misrepresented its financial obligations to Sierra, an insurance company cannot reasonably be expected to speculate that litigation in connection with a failed merger, or an insurance department’s concern about under-reserved, would lead to a shareholders’ class action against the directors and officers for securities law violations. We therefore conclude that the Sierra complaint and the attached receivership pleadings also did not describe the circumstances by which the directors and officers first became aware of the possibility that it could be sued for securities law violations.
III. Conclusion
To the extent that the Sierra complaint and attached receivership pleadings did not adequately describe the consequences that resulted from PCA’s wrongful acts and the circumstances of PCA’s discovery of those acts, PCA’s April 29th letter did not comply with the notice requirements contained in the policy. Accordingly, we affirm the trial court’s order denying partial summary judgment to National Union and granting summary judgment in favor of Lloyd’s.
Affirmed.

. Although there were two policies, a primary and an excess, we have treated them as one for the sake of clarity and because they contain essentially the same language at issue on this appeal.