LOGUE, J.
Appellants challenge a final summary judgment of the trial court that determined no coverage was owed under a claims-made insurance policy for a class action claim because the claim was filed outside the policy period. We hold that the trial court erred in determining that the class action claim was not covered. The class action claim at issue was based on the same or similar facts, circumstances, and transactions as a claim brought before the policy terminated. Under the policy provision governing multiple claims, therefore, the class action claim relates back to the earlier-filed claim. Accordingly, we reverse.
FACTS AND PROCEDURAL HISTORY
Berman Mortgage Corporation (“BMC”) is a mortgage broker that arranged for privately funded mortgages for commercial properties. It brokered and then serviced the mortgages for private investors who participated in the loans. Axis Surplus Insurance Company issued BMC a Miscellaneous Professional Liability Insurance Policy, with effective dates from May 10, 2007 to May 10, 2008 (“the policy”). The policy covers, among other things, “[a] negligent act, error or omission.”
In October 2007, Robert Revitz, a private investor who had participated in a number of BMC’s mortgages, filed a complaint against BMC and other entities alleging BMC negligently brokered and serviced mortgages by various actions, including: (1) “failing to perform proper due diligence to determine the viability of the projects;” (2) using negligent accounting practices, including “co-mingling the funds” and “co-mingling income and revenue;” and (3) “negligently failing to fully and accurately disclose the amount, nature and status of superior encumbrances on the property.” This claim (“the Revitz claim”) named eleven mortgages and claimed damages in excess of $4.5 million. The Revitz claim was filed during the policy period and Axis received notice of the claim during the policy period.
In December 2007, Michael Goldberg (“the Receiver”) was appointed to serve as receiver over BMC’s assets to protect its creditors. The Revitz claim was stayed as a result of the receivership.
In May 2009, after the policy had terminated, the Receiver and Jerilynn Gidney, an investor in BMC’s mortgage transactions, filed a class action complaint against the principal officers of BMC on behalf of approximately 640 similarly situated investors who had financed mortgages brokered by BMC (“the class claim”). The class complaint claimed damages in excess of $168 million. The complaint alleged that *611 BMC negligently brokered and serviced forty-one named projects by (1) “neglecting to engage in fundamental due diligence required by minimum industry standards,” (2) “neglecting to ensure that minimum accounting safeguards were in place,” and (3) “neglecting to ... advise Lenders of superior liens in certain properties.” The class claim also alleged that Gidney is the attorney-in-fact to bring claims on behalf of several relatives who were also major investors in the projects at issue, including Revitz.
In response to the class claim, Axis filed the instant declaratory judgment action, seeking a declaration that no coverage was owed under the policy for the class claim. Axis moved for summary judgment and Gidney and the Receiver cross-moved. The trial court granted Axis’s motion for summary judgment and denied Gidney and the Receiver’s motion. Gidney and the Receiver timely appealed.
ANALYSIS
The trial court analyzed the coverage issue under the Reported Wrongful Acts provision of the policy, treated the Revitz claim as if it were a report by the insured, and held that the Revitz claim did not provide the insurer with the information required under that provision. We hold that the coverage issue should have been analyzed under the Multiple Claims provision of the policy, which does not require the insured to provide any particular level of information, but instead requires only that the subsequent claim be based upon the same or similar facts, circumstances, and transactions as a prior claim brought during the policy period. When so analyzed, the class action claim relates back to the Revitz claim and, therefore, the class action claim is covered.

A. Claims-Made Insurance

The policy at issue is a “claims-made” insurance contract. Insurance can be written on either an “occurrence” or “claims-made” basis. Occurrence policies “trigger the carrier’s liability if the error or omission occurs during the period of policy coverage, regardless of the date of discovery or the date the claim is made or asserted.” U.S. Fire Ins. Co. v. Fleekop, 682 So.2d 620, 622 (Fla. 3d DCA 1996) (citation and internal quotation omitted). An occurrence policy allows an insured to make a claim against the policy long after the policy has terminated, so long as the occurrence from which the claim arises took place during the policy period.
With claims-made policies, on the other hand, coverage will only “trigger ... if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term.” Id. (citations and internal quotation omitted). With claims-made policies, notice to the insurer of a claim or potential claim during the policy period is generally required to trigger the insurer’s coverage obligations. This notice typically takes the form of the claim being made during the policy period.
In the instant case, for example, this type of basic, claims-made coverage is provided by the provision of the policy entitled “Claims First Made.” This provision reads:
Claims First Made
This insurance applies when a written Claim is first made against any Insured during the Policy Period. To be covered, the Claim must also arise from a Wrongful Act committed during the Policy Period.
The Company will consider a Claim to be first made against an Insured when a written Claim is first received by any Insured.
*612 Claims-made policies also often permit coverage of “related claims,” meaning claims made after the policy period that related back to (1) a report made by the insured during the policy period, or (2) a claim made by a third party during the policy period. The “related claims” provisions serve the following purposes:
(a) to allow insurers to confíne related wrongful acts to a single policy period and, thereby, a single liability limit, and
(b) to allow an insured to buy a new policy, despite facing additional liability exposure from its past acts, by having future related claims covered by the prior policy.
In re DBSI, Inc., 08-12687 PJW, 2011 WL 3022177, at *3 (Bankr.D.Del. July 22, 2011) (citations omitted). The dispute in this case focuses on whether the Revitz claim comes within the “related claims” provisions of the policy.

B. The Revitz Claim Does Not Come Within the Reported Wrongful Acts Provision.

The trial court focused on the related claims provision entitled “Reported Wrongful Acts” which provides coverage for claims made subsequent to the policy period but that relate back to a prior written report by the insured. Under this provision, the insured gives the insurer a report of a wrongful act it committed during the policy period. By reporting its wrongful act, even though no claim has yet been made, the insured puts the insurer on notice of potential liability, and thereby secures coverage in the event a claim is subsequently made.
The Reported Wrongful Acts provision contains strict requirements concerning the level of information that must be reported. This Reported Wrongful Acts provision of the policy reads:
Reported Wrongful Acts
This policy will apply to a written Claim first made against any Insured after the end of the Policy Period, but only if all of the following conditions are met:
(1) The Wrongful Act giving rise to the Claim is committed between the Retroactive Date and the end of the Policy Period;
(2) The Company receives written notice from the Insured during the Policy Period of the Wrongful Act. The notice must include all of the following information:
(a) The names of those persons or organizations involved in the Wrongful Act;
(b) The specific person or organization likely to make the Claim;
(c) A description of the time, place and nature of the Wrongful Act; and
(d) A description of the potential Damages[.]
The trial court treated the Revitz claim as a written report of a wrongful act under this provision. Because the Revitz claim did not provide “a description of the potential damages” that included the class action claim, the trial court concluded the Revitz claim did not constitute an adequate report to trigger coverage of the class claim. We agree the Revitz claim did not provide this information. But we disagree with the conclusion that the Reported Wrongful Acts provision governs the coverage dispute at issue. As discussed in the next section, the policy contains a specific provision which deals with when and how such later-filed claims relate back to a previously-filed claim, like the Revitz claim.
For this reason, we distinguish National Union Fire Insurance Co. of Pittsburgh, PA v. Underwriters at Lloyd’s, London, 971 So.2d 885 (Fla. 3d DCA 2007). National Union concerned whether subsequent claims related back to an insured’s *613 report of a wrongful act, not whether subsequent claims related back to an actual claim. This distinction is crucial because the policy provision at issue in National Union, like the Reported Wrongful Acts provision in the instant case, provided that the insured’s report seeking to secure coverage for potential future claims had to adequately describe the potential liability presented by the possible future claims. The Court found that the report at issue failed to do so.[1] In contrast, the Multiple Claims provision which governs here has no requirement that a prior claim identify or describe the potential liability stemming from related claims.[2]

C. Under the Multiple Claims Provision, the Class Action Claim Relates Back to the Revitz Claim Because It is Based on Common Facts, Circumstances, Transactions, Events or Decisions.

The provision of the policy entitled “Multiple Claims” provides coverage for claims made subsequent to the policy period that relate back to a prior claim brought by a third party during the policy period against the insured. The policy defines “claim” as “a demand or assertion of a legal right seeking Damages made against any Insured.” The Multiple Claims provision deems all claims that arise from the same “wrongful act” to have been made on the date the first of the claims is made.
The Multiple Claims provision reads:
Multiple Claims
All Claims arising from the same Wrongful Act will be deemed to have been made on the earlier of the following times:
(1) The date the first of those Claims is made against any Insured; or
(2) The first date the Company receives the Insured’s written notice *614 of the Wrongful Act.[3]
Significantly, the Multiple Claims provision does not require that the insured anticipate the subsequent related claim or provide a description of the estimated damages that might result from any subsequent claim. Instead, in language crucial to this case, the policy states that all wrongful acts “related by common facts, circumstances, transactions, events and/or decisions ... will be treated as one Wrongful Act.”
The Multiple Claims provision governs whether the class claim relates back to the Revitz claim. The Revitz claim was a claim covered by the policy made during the policy period.
The central issue in this case thus becomes whether the class claim relates back to the Revitz claim in such a manner as to trigger coverage under the Multiple Claims provision of the policy. If the class claim and the Revitz claim are “related by common facts, circumstances, transactions, events and/or decisions ... [they] will be treated as one Wrongful Act” and the class claim will be “deemed to have been made” on the date of Revitz claim — which was made during the policy period. For the reasons explained below, we hold that the class claim relates back to the Revitz claim under the Multiple Claims provision.
In Capital Growth Financial LLC v. Quanta Specialty Lines Insurance Co., 07-80908-CIV, 2008 WL 2949492 (S.D.Fla. July 30, 2008), the court interpreted a “claims-made” policy with a related claims .provision similar to the Multiple Claims provision at issue here. During the policy period, one client had filed an arbitration claim against the insured brokerage firm claiming that the firm had churned the account and inappropriately invested in high-risk stocks. Later, after the policy period had expired, five other clients came forward and filed similar claims. The issue was whether the later claims filed after the policy period related back to the first claim filed during the policy period.
The policy in Capital Growth defined “interrelated wrongful acts” as those “connected by reason of any common fact, circumstance, situation, transaction, casualty, events, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, event, decisions or policies.” Id. at *1. The court noted that “ ‘relatedness’ [is] a concept encompassing both logical and causal connections, an assessment which typically involves consideration of whether the acts in question are connected by time, place, opportunity, pattern, and perhaps most importantly, by method or modus operandi.” Id. at *4 (citation omitted). This policy language, the court found, “does not require exact factual overlap, or even identical legal causes of action, but rather focuses simply on whether the claims are logically linked by a ‘sufficient factual nexus.’ ” Id.
In Capital Growth, the Court held that the claims filed after the policy period related back to claim because the claims “all share the common allegation ... [of] a pattern of churning and unsuitable, aggressive and risky investments for clients expressing conservative trading objectives.” Id. at *2. It did so even though the claimants, the accounts, the individual investments, and the damages were different. The court reasoned that neither the “variation in the types of misrepresenta *615 tions allegedly made to induce the investors,” nor “the unique financial position of each investor” was sufficient to negate the interrelatedness of the claims. Id. at *5.
The analysis in Capital Growth supports the conclusion that the class claim in the instant case relates back to the Revitz claim. As in Capital Growth, the class claim and the Revitz claim are based on the same course of conduct by the insured, in this case BMC’s allegedly negligent brokering and servicing of mortgages. The fact that individual class members may have been involved in separate mortgage transactions does not negate the fact that each claim is based on BMC’s negligence in this regard. We agree with the court in Capital Growth that “the unique financial position of each investor” in the various projects financed through BMC does not change the fact that the claims are related by a “sufficient factual nexus.”
Similarly, in Vozzcom, Inc. v. Great American Insurance Company of New York, 666 F.Supp.2d 1332, 1339 (S.D.Fla.2009) aff'd, 374 Fed.Appx. 906 (11th Cir.2010), the court held that multiple claims filed after the policy period related back under a “claims-made” policy to a claim filed during the policy period. In Vozz-com, one employee filed a claim during the policy period contending that Vozzcom had illegally failed to pay wages for overtime work. After the policy period expired and during a time when Vozzcom was insured by a different insurer, other employees came forward and similarly claimed Vozz-com had illegally failed to pay them overtime. The court held that the later-filed claims arose from the same “wrongful act” under the policy as the claims filed during the policy period, and thus were together considered a “single claim” under the policy. As such, those later-filed claims fell within the policy coverage of the earlier policy period, which was issued by the prior insurer. Id.
In assessing the relatedness of the claims, the Vozzcom court focused on factors such as “whether the parties are the same, whether the claims all arise from the same transactions, whether the ‘wrongful acts’ are contemporaneous, and whether there is a common scheme or plan underlying the acts.” Id. at 1338. The court concluded that these factors supported a determination that the claims were related, because the multiple claimants were “employed in the same positions, as cable technicians!,] ... were non-exempt hourly or piece rate workers!,] ... were employed by Vozzcom during approximately the same time period!, and] ... were allegedly denied overtime coverage in the course of their employment by Vozzcom.” Id. at 1339.
The relatedness analysis in Vozzcom supports the conclusion that the class claim in the instant case relates back to the Revitz claim. In terms of BMC’s alleged negligence, the members of the class are investors in the same situation as the investors who made the Revitz claim. Indeed, while the class members constitute a broader group of plaintiffs, Revitz is within the group. Most of the specific projects listed in the Revitz claim are included in the class claim. Finally, the Revitz claim and the class claim are based on the same course of conduct by BMC, particularly its alleged failure to conduct due diligence, maintain proper accounting, and detect and report prior encumbrances on the properties which provided collateral for the loans.
It could be argued that the class claim should not relate back to the Revitz claim because the potential damages relating to the class claim are significantly greater than the damages at issue in the Revitz *616 claim. We find no authority to support this contention.
The number of claimants or amount of alleged damages involved in each claim is not dispositive in this analysis under a Multiple Claims provision like the one at issue. Acts can be “related” under the policy’s definition of “Wrongful act” even if the resulting claims differ in magnitude, such as the amount of damages or number of claimants, so long as the basis of those claims are “common facts, circumstances, transactions, events and/or decisions.” See, e.g., Capital Growth Fin. LLC v. Quanta Specialty Lines Ins. Co., 07-80908-CIV, 2008 WL 2949492 (S.D.Fla. July 30, 2008) (holding that five subsequent claims by different claimants arose from the same wrongful act as a sole earlier claim filed during the policy period because the claims were connected by common facts and circumstances); Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co., 393 F.Supp.2d 693, 707 (E.D.Wis.2005) (holding that thirty-eight subsequent lawsuits, including several class actions, related to prior class action because they were all based on the insured’s allegedly illegal underwriting practice).
Our conclusion that the class action claim relates back to the Revitz claim is in accordance with the dual purposes behind related claims provisions in claims-made insurance policies mentioned earlier in this decision. This interpretation limits Axis’s liability for all claims related to the wrongful act at issue in the class claim and the Revitz claim — negligent brokering and servicing of the mortgages — to a single policy period and liability limit. Although BMC is in receivership, this interpretation also would have allowed BMC to purchase a similar professional liability policy from a subsequent insurer, despite the potential for more claims arising from its alleged negligence during the policy period.[4]
CONCLUSION
In sum, we hold that class claim is covered under the policy because it is related by common facts, circumstances, transactions, events, and decisions to the Revitz claim and therefore relates back to the Revitz claim under the Multiple Claims provision of the policy.
Reversed and remanded for proceedings consistent with this opinion.

. National Union involved a written report of a future “potential claim.” 971 So.2d at 887. The report sought to secure coverage under a directors and officers liability policy in the event that the directors and officers were sued after the policy period expired. That written report consisted of a cover letter with a copy of a complaint against the company that employed the insured directors and officers. The complaint sought a declaration that a third party had rightfully terminated an agreement to merge with the company. The complaint was not covered by the policy because no director or officer had been named as a defendant. After the policy period expired, the officers and directors were sued in a different lawsuit by shareholders for violations of federal securities laws. The issue arose whether the subsequent lawsuit for securities violations related back to the prior written report of the lawsuit over the failed merger. This Court held that the report did not provide the details required under a policy provision, which required the insured to report the potential consequences or exposure that might result from the reported wrongful act. Id. at 887-88. This court reasoned that "[tjhere was no reference in these materials to intimate a potential claim that might be brought against [the company’s] directors and officers by its shareholders for securities law violations.” Id. at 889. National Union thus involved whether the subsequent claim related back to a report by the insured seeking to secure coverage; it did not involve whether a subsequent claim related back to a prior claim.

. To the extent that Axis argues that the requirements of the Reported Wrongful Acts provision in the instant case be imported into the Multiple Claims provision, we decline to accept such an interpretation, which involves rewriting the language of the policy. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla.2003) ("[W]e have consistently held that in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.”) (internal quotations and citation omitted).

. This last sentence overlaps with the Reported Wrongful Acts provision. It addresses the situation where multiple claims are filed after the policy period. If the insured anticipated these claims by filing a written report during the policy period of the wrongful act from which all of these subsequent claims arose, then all of the subsequent claims will relate back to that written report.

. Because the Multiple Claims provision applies to bring the class claim within the policy period, we need not address the issue of the propriety of the policy termination raised by Gidney and the Receiver. We also note that the trial court has not yet considered the class certification question in this case. This opinion should not be construed to offer an opinion of this court on that question. We affirm without discussion Axis's cross appeal on the application of a policy exclusion.