[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13853
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cv-01465-TJC-JBT


UNITED SPECIALTY INSURANCE COMPANY,

Plaintiff - Counter Defendant - Appellee,

versus

TZADIK ACQUISITIONS, LLC,
TZADIK MANAGEMENT GROUP, LLC,
TZADIK MANAGEMENT GROUP 2, LLC,
TZADIK PROPERTIES, LLC,

Defendants - Counter Claimants - Appellants,

JAMES RIVER INSURANCE COMPANY, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 7, 2021)

Before WILSON, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

This appeal is about whether United Specialty Insurance Company (United) has a duty to defend or indemnify Tzadik Acquisitions, LLC and Tzadik Management Group 2, LLC (Tzadik) in an underlying lawsuit against Tzadik. Tzadik had a commercial general liability (CGL) insurance policy with United which identified 45 properties owned or operated by Tzadik but did not identify Kings Trail Apartments (KTA)—the premise from which the underlying lawsuit arose. As a result, the district court granted summary judgment to United, finding that it had no duty to defend or indemnify. After careful review, we affirm.

I.

Tzadik owns and manages approximately 60 apartment complexes. In 2015, Tzadik submitted a CGL insurance policy application to United. The application listed the nature of Tzadik's business as "apartments." Under "premises information," it identified 45 properties but did not include KTA—a Jacksonville, Florida apartment complex owned and managed by Tzadik.

United issued the CGL policy for the timeframe October 15, 2015 through October 15, 2016. Under the agreement, United would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy applied to bodily

2

injury or property damage that "is caused by an 'occurrence' that takes place in the 'coverage territory.'"  The coverage territory was defined as "the United States, Puerto Rico, and Canada."

The policy included CGL Declarations that listed Tzadik's business as "apartment building operators" and included a schedule of "all premises [Tzadik] own[s], rent[s], or occup[ies]."  The schedule was comprised of 45 properties—the same ones listed in the application.  KTA was not among them.  The CGL Declarations limited coverage to $1,000,000 per occurrence and $2,000,000 in the general aggregate.  But the coverage limits for scheduled properties were subject to a Designated Locations General Aggregate Limit Endorsement (DLE).  The DLE assigned each scheduled property its own liability limit.

The policy also provided a "classification and premium" table.  It classified each of the 45 premises by property type (e.g., apartment building, swimming pool, or vacant land), and assigned each a policy premium.  The table did not include KTA.  The record shows that properties were added and removed through endorsements during the policy period, and premiums changed accordingly to reflect those additions and removals.  Yet KTA was never added.

In October 2016, a fatal shooting occurred at KTA.  At the time, Tzadik had an insurance policy from James River Insurance Company (James River), which listed KTA as a premise owned and operated by Tzadik.  Tzadik reported the fatal

3

shooting to James River in December 2016.  When the decedent's wife sued

Tzadik in Florida state court for wrongful death in 2017, James River defended

Tzadik in the action.

In August 2018, Tzadik reported the shooting to United and sought coverage

for the underlying wrongful death suit under the United CGL policy.  United

denied coverage on the basis that the policy did not cover KTA.  Then, United filed

a two-count complaint seeking a declaration that it had no duty under the policy to

defend or indemnify Tzadik in the wrongful death action.  Count I alleged that the

underlying lawsuit against Tzadik arose from a property that was not covered

under the insurance policy.  Count II alleged that Tzadik failed to timely notify

United of the incident at KTA.  Tzadik counterclaimed for breach of contract and

bad faith.

After discovery, the parties filed cross motions for summary judgment.  The

district court entered an order on September 14, 2020, granting United's motion for

summary judgment on Count I and denying Tzadik's motion.[1]  The court found

that United was entitled to a declaratory judgment that it had no duty to defend

Tzadik in the underlying wrongful death suit because the United CGL policy did

---

[1] Because it granted summary judgment on Count I, the district court did not reach the issue of late notice raised in Count II of United's complaint.

not cover KTA.  On appeal, Tzadik asks us to reverse the district court's grant of summary judgment for United and to enter judgment in Tzadik's favor.

## II.

We review de novo a grant or denial of summary judgment, applying the same standard applied by the district court.  *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  A district court properly grants summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  Contract interpretation is also a question of law reviewed de novo.  *Id.*  And because an insurance policy is treated like a contract under Florida law, we review de novo the interpretation of an insurance policy.  *Id.*

## III.

The district court in this case had subject matter jurisdiction based on diversity of citizenship.  *See* 28 U.S.C. § 1332(a)(1).  Therefore, the substantive law of the forum state, Florida, is controlling.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Under Florida law, "contracts of insurance must be construed by resorting to the plain language of the policies as freely bargained for by the parties."  *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993).  "Courts are to give effect to the intent of the parties as

expressed in the policy language, and if the policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured and strictly against the insurer who prepared the policy." *Id.*

However, we construe the insurance policy "as a whole, endeavoring to give every provision its full meaning and operative effect." *See Wash. Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). We must "avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." *Id.* And in considering the contract as a whole, we must consider the insurance application, which "becomes a part of the agreement between the parties." *Nugget Oil, Inc. v. Universal Sec. Ins. Co.*, 584 So. 2d 1068, 1070 (Fla. Dist. Ct. App. 1991) (citing *Mathews v. Ranger Ins. Co.,* 281 So. 2d 345, 348 (Fla. 1973)); *see also* Fla. Stat. § 627.419(1).

Tzadik argues on appeal that the district court erred in finding that the United CGL policy did not cover KTA because the policy provides CGL coverage rather than premises-specific coverage. Tzadik contends that the broad definition of "coverage territory" means that the policy covers an occurrence anywhere in the United States, Puerto Rico, and Canada, whether or not the occurrence is linked to one of the scheduled premises. And to the extent there is any ambiguity as to the scope of the policy's coverage, Tzadik argues, the ambiguity must be resolved in favor of coverage.

Tzadik says that neither the schedule of 45 properties nor the "classification and premium" table listing the same 45 properties unambiguously limits coverage to those properties. According to Tzadik, the policy's $2,000,000 general-aggregate limit and $1,000,000 each-occurrence limit are not premises-specific; they cover both scheduled and non-scheduled premises. The schedule of 45 properties, Tzadik contends, then expands policy coverage by indicating specific properties that are subject to their own $2,000,000 general-aggregate limit rather than to the policy's general-aggregate and each-occurrence limits that are shared across all properties.

In reaching the contrary conclusion, the district court relied heavily on a Florida appellate court decision, *Nugget Oil*, 584 So. 2d at 1070. In that case, Nugget owned approximately 50 gas stations throughout Florida and Alabama where it sold products including beer and wine. *Id.* at 1069. Seeking to get liquor liability insurance for its stores, Nugget filled out an application with Universal Security Insurance Company. *Id.* Under a section of the application asking for the "Name and Address of All Locations," Nugget referenced an attached list of its stores. Because Nugget knew Universal would not insure its Alabama stores, those stores were crossed off. *Id.*

Universal issued Nugget the liquor liability insurance policy. *Id.* The policy described Nugget's business premises as convenience stores. *Id.* And under a line

7

asking for "Location of All Premises You Own, Rent or Occupy," the policy stated: "Various at all locations occupied by the insured." *Id.*

When a negligence suit arose at one of Nugget's Alabama stores in connection with the unlawful sale of alcohol, Universal argued that it had no duty to defend because Alabama stores were not covered under the policy. *Id.* Nugget countered that the language "all locations" could be interpreted to extend coverage to all of Nugget's stores. *Id.* The court disagreed, finding that the phrase "all locations" "must not be read in isolation." *Id.* at 1070. The insurance contract had to be read in conjunction with the application. *Id.* And giving meaning and effect to every provision in the policy and the application, "the meaning [wa]s clear: coverage [wa]s provided to . . . all Nugget locations identified in the list, except those struck through and thereby intentionally excluded." *Id.*

We agree with the district court that *Nugget Oil* is on point and persuasive. Reading the application and the insurance policy as a whole, as we must, the meaning is not ambiguous. *Id.*; *see also Ruderman*, 117 So. 3d at 948. Giving effect to every provision, including the list of 45 properties in the application and policy, as well as the "classification and premium" table, the parties' clear intent was to limit coverage to the scheduled properties. *See Ruderman*, 117 So. 3d at 948. In fact, United's position is even stronger than that of the insurance company in *Nugget Oil*. The covered properties here are listed in *both* the application *and*

8

the policy, whereas they were listed only in the application in *Nugget Oil*. *See* 584 So. 2d at 1069. While Tzadik correctly points out that *Nugget Oil* did not involve a CGL policy, the decision is nonetheless persuasive. It shows that a list of scheduled properties may unambiguously limit a policy's application despite language elsewhere in the agreement that would broaden coverage if read in isolation.

Tzadik argues that rather than relying on *Nugget Oil*, we should consider the rationale of two district court cases: *Evanston Ins. Co. v. Gaddis Corp.,* 145 F. Supp. 3d 1140 (S.D. Fla. 2015), and *Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc.*, 771 F. Supp. 2d 1336 (S.D. Fla. 2011). Yet these cases are less analogous than *Nugget Oil*. In *Gaddis*, for example, the question was whether a CGL policy placed a duty on an insurance company to defend Yellow Cab in an underlying lawsuit involving a driver who raped a passenger in a parking lot that was not scheduled in the CGL policy. *Gaddis*, 145 F. Supp. 3d at 1143. The insurance policy contained a designated premises endorsement (DPE) to limit coverage to liability "arising out of certain designated premises." *Id.* at 1144. The parking lot where the rape occurred was not one of those designated premises. *Id.* at 1149. But under Florida law, "[a]ny attempt to modify a commercial general liability policy so that coverage is limited to liabilities incurred at specific locations can succeed only if the modifying language is 'clear and unequivocal.'" *Id.* In

9

*Gaddis*, the policy's "arising out of" language did not clearly and unambiguously convert the CGL policy to a premises-liability policy by excluding coverage of off-site incidents. *Id.* at 1149–50. The court thus held that the incident triggering the underlying suit was covered under the policy because "Yellow Cab's taxi operation" could be "reasonably and logically construed as 'arising out of' certain locations contained in the Schedule of Locations."

The issue here—at least as it was argued below—is quite different: whether an incident that arose from a *non*-scheduled property is covered under the CGL. Therefore, *Gaddis*—and likewise *Chabad House*, which similarly involved an insurer's attempt to use a DPE to convert a CGL policy to a premises-liability policy—is not on point here.

Tzadik makes two additional arguments, neither of which we find persuasive. First, Tzadik argues that United failed to use more precise limiting language that was available to it. Tzadik asks us to take judicial notice of another policy United wrote that covered bodily injury only if the injury arose out of "specifically covered operations" (in that case, "[d]riveway and sidewalk paving"). *Neth. Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 98 (S.D.N.Y. 2017). If United was aware of such limiting language and chose not to use it, the argument goes, that would be evidence that United lacked the intent to limit coverage to designated premises. We disagree that the language United used in an

10

insurance policy limiting coverage to sidewalk paving activities has much bearing

here. As we have explained, the CGL policy and the application—when read in

context—clearly limit coverage to the scheduled premises. When the contract's

plain language is clear, we will not impute an alternative meaning based on

language contained in a separate contract. *See Stuyvesant Ins. Co. v. Butler*, 314

So. 2d 567, 570 (Fla. 1975).

Second, Tzadik suggests that even if coverage were limited to the 45 listed

properties, there could still be a nexus between Tzadik's operation of one of those

properties and the negligence alleged in the underlying lawsuit related to the KTA

shooting. Tzadik argues that it might have made decisions related to apartment

security, for example, in one of the listed locations. As a result, Tzadik contends,

United is not entitled to summary judgment. Again, we disagree. It appears to

have been undisputed throughout this litigation that the underlying wrongful death

lawsuit arose from a non-scheduled property rather than from any scheduled

property. In the proceedings below, Tzadik cited nothing in the record to suggest a

causal nexus between the underlying lawsuit and a scheduled property. Because

Tzadik did not establish a genuine issue of material fact as to whether the

underlying lawsuit arose from a scheduled property, we reject Tzadik's contention

that the district court erred in granting United summary judgment on this basis.

IV.

In conclusion, a reasonable reader would not construe the application and policy to cover KTA—a property that is not among the 45 properties listed in the application and the insurance policy. While the policy's broad definition of coverage territory—"the United States, Puerto Rico, and Canada"—could be read in isolation to create broader coverage, we cannot read that provision in isolation. Reading it in harmony with the rest of the policy and application, and giving effect to the agreement as a whole, we find that the meaning is clear. United has no duty to defend Tzadik in an underlying lawsuit that arose from an incident at a non-scheduled premise. Therefore, we affirm.

**AFFIRMED.**

12