EVANSTON INSURANCE COMPANY, Plaintiff,

v.

GADDIS CORPORATION, a Florida Corporation, B & L Service a Florida Corporation d/b/a Yellow CAB of Broward, and M.D., an Individual, Defendants.

Gaddis Corporation, a Florida corporation, and B & L Service Inc., a Florida corporation, Counter–Claimants,

v.

Evanston Insurance Company, Counter–Defendant.

Case No. 15–CIV–60163–BLOOM/Valle

United States District Court, S.D. Florida.

Signed August 31, 2015

Filed 09/01/2015

Dustin Craig Blumenthal, Lisa Jane Conrey, John R. Catizone, Litchfield Cavo LLP, Fort Lauderdale, FL, for Plaintiff.

Mark Richard Boyd, Scott Allen Markowitz, Demahy Labrador Drake Victor Payne & Cabeza, Fort Lauderdale, FL, for Defendants and Counter–Claimants.

Michael James Corey, Obront Corey, PLLC, Miami, FL, for Defendants.

Dustin Craig Blumenthal, Lisa Jane Conrey, John R. Catizone, Litchfield Cavo LLP, Fort Lauderdale, FL, for Counter–Defendant.

## *OMNIBUS ORDER ON MOTIONS*

BETH BLOOM, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court upon Defendant M.D.'s Motion to Dismiss and Stay Remainder of Action, ECF No. [33], Defendants, Gaddis Corporation and B & L Service, Inc. d/b/a Yellow Cab of Broward's Motion for Summary Judgment, ECF No. [44], and Plaintiff Evanston Insurance Company's Cross–Motion for Final Summary Judgment, ECF No. [53] (collectively, the "Motions"). The Court has reviewed the Motions, all supporting

and opposing filings, the record in this case, and is otherwise fully advised.

## I. Background and Facts

Evanston Insurance Company ("Evanston") filed this declaratory judgment action pursuant to 18 U.S.C. § 2201 seeking a declaration that: (1) Evanston has no duty to defend B & L Service, Inc. d/b/a/ Yellow Cab of Broward, ("Yellow Cab") or its parent corporation, Gaddis Corporation ("Gaddis") (collectively, the "Insureds") against claims filed by MD in *MD v. B & L Service, Inc. et al*, No. 0:14–cv–62870–CMA (S.D.Fla.) (the "Underlying Litigation"); and (2) Evanston has no duty to indemnify Yellow Cab in connection with MD's claims. *See* Complaint, ECF No. [1].

### A. The Underlying Litigation

The Underlying Litigation concerns the brutal sexual assault and rape of Defendant M.D. *See MD v. B & L Service, Inc. et al*, No. 0:14–cv–62870–CMA, ECF No. [51] ("UL Amended Complaint") (S.D.Fla. Mar. 3, 2015). On October 9, 2014, Defendant M.D. was visiting Fort Lauderdale on vacation. *Id.* at ¶ 58. After visiting a lounge at the Galleria Mall on Sunrise Boulevard, M.D. and her female companion went to a taxicab stand outside the Mall where a taxi was hailed. *Id.* at ¶ 59. The taxi, operated by Yellow Cab and driven by Max Raphael ("Raphael"), accepted the passengers and agreed to take the two women to their destination. *Id.* at ¶ 60. Prior to arriving at their destination, Raphael told his passengers that he could not accept credit cards and drove them to an Automated Teller Machine ("ATM") so that they could retrieve cash. *Id.* at ¶ 62. Immediately after M.D.'s companion exited the taxi to walk to the ATM, Raphael sped off with M.D. still in the back seat. *Id.* at ¶¶ 63–64. Ignoring M.D.'s pleas, Raphael drove to an unoccupied parking lot off the 100 block of Northeast Third

Avenue in Fort Lauderdale, exited the taxi, ripped M.D. from the backseat, threw her to the ground, and brutally raped her. *Id.* at ¶¶ 65–69. M.D. was then left, unconscious, in the parking lot. *Id.* at ¶ 70.

M.D. was taken to a hospital where a "rape kit" was performed on her. *Id.* at ¶ 71. The DNA obtained from the rape kit was found to match Raphael and, on November 25, 2014, Raphael was arrested. *Id.* at ¶¶ 72–73. Raphael is currently awaiting trial on felony kidnapping and sexual battery charges in the Circuit Court in and for Broward County, Florida. *Id.* at ¶ 73.

On December 17, 2014, M.D. commenced the Underlying Litigation, asserting four counts directly against Yellow Cab for its negligent hiring, retention, and supervision, general negligence, breach of contract of carriage, and negligent infliction of emotional distress, as well as three counts under vicarious theories of liability against Yellow Cab including battery, intentional infliction of emotional distress, and false imprisonment. *See id.* at ¶¶ 75–146. Additionally, M.D. brings one claim for negligence against the corporation which owns and operates the taxi stand where M.D. and her companion entered Raphael's cab. *Id.* 147–57.

### B. The Insurance Policy

Prior to the incident giving rise to the Underlying Litigation, Evanston issued Gaddis, and Yellow Cab by endorsement, a Commercial General Liability Policy bearing policy number 3C05723 (the "Policy"). *See* Policy, ECF No. [1–1] at 6, 12–14. The Policy was in effect on October 9, 2014, the date of the unfortunate events. *See id.* at 6 (providing a policy period from March 31, 2014 to March 31, 2015). The Policy provides that Evanston shall "pay those sums that the insured becomes legally obligated to pay as damages because of

'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 26 (Section. I, Coverages). Logically, therefore, Evanston is not obligated to pay for damages arising from bodily injury or property damage "to which this insurance does not apply." *Id.* As noted, this declaratory action presents a question of whether Evanston is obligated to defend and indemnify its insureds in the Underlying Litigation.

The Policy contains various endorsements that limit coverage provided to the insured. Of particular note are the Absolute Professional Liability Exclusion endorsement ("Professional Liability Exclusion") and the Specified/Designated Premises/Project Limitation endorsement ("Designated Premises Exclusion"). The Professional Liability Exclusion disavows coverage for the insured's failure to render professional services and states the following:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

This insurance does not apply to any liability arising out of the rendering of or failure to render professional services or any error or omission, malpractice, or mistake of a professional nature committed or alleged to have been committed by or on your behalf.

This exclusion applies to all injury sustained by any person, including emotional distress, whether alleged, threatened, or actual, including but not limited to your negligence or other wrongdoing. Further, this exclusion applies with respect to:

1. Hiring, placement, employment, training, supervision, or retention of a person for whom any insured is or ever was legally responsible; or

2. Investigation or reporting to the proper authorities, or failure to so report, or the failure to protect any person while that person was in your care, custody, or control.

*Id.* at 23.

The Designated Premises Exclusion limits coverage to bodily injury arising out of certain designated premises and reads in full:

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or

2. The project shown in the Schedule (or Declarations).

*Id.* at 56. The Policy's "Schedule of Locations" contains seventy-one (71) specific addresses to which the insurance purportedly applies. *See id.* at 15–17 ("Schedule of Locations"). Throughout the term of the Policy, the parties added and deleted various locations. *See* Policy at 15–17, 73–75, 77–78, 81, 83, 87, 89, 92–93. As locations were included or removed, the premium for the Policy was adjusted accordingly. *See id.* The unoccupied parking lot where M.D. was viciously assaulted is not, nor ever was, on the Schedule of Locations. *See id.*

## C. Yellow Cab's Operations

Yellow Cab is a taxicab dispatch company, which operates in Broward County, Florida. *See* Defendants' Statement of Facts ("Def.SOF"), ECF No. [45] at ¶ 8; Evanston Statement of Facts ("Evanston SOF"), ECF No. [51] at ¶ 8. As a dispatch company, Yellow Cab sells services to taxicab permit holders and drivers, including services such as, *inter alia*, digital dispatch, contracts with various hotels and casinos, access to the Fort Lauderdale In-

ternational Airport, access to Port Everglades, and vehicle maintenance and repair for vehicles. Def. SOF at ¶ 9; Evanston SOF at ¶ 9. Yellow Cab operates out of three physical locations in Broward County. Def. SOF at ¶ 10; Evanston SOF at ¶ 10. A structure at 221 West Oakland Park Boulevard, Oakland Park, Florida, houses Yellow Cab's executive and financial offices as well as its risk management, advertising, marketing, dispatch, and human resources departments. Def. SOF at ¶ 10; Evanston SOF at ¶ 10. A garage facility and vehicle inventory storage is located at 1800 Northwest 23rd Avenue, Fort Lauderdale, Florida. Def. SOF at ¶ 10; Evanston SOF at ¶ 10. And last, a facility housing driver services and an additional garage facility is located at 800 Northwest 7th Avenue, Fort Lauderdale, Florida. Def. SOF at ¶ 10; Evanston SOF at ¶ 10. All three of these locations appear on the Policy's Schedule of Locations. *See* Policy at 15–17 (Locations 7, 9, and 28).

## II. Discussion

All three Motions presently before the Court seek resolution of a single issue: whether Evanston has a duty to defend and indemnify its Insureds in the Underlying Litigation brought by M.D. *See* Motions, ECF No. [33], [44], and [53]. Accordingly, the Motions are addressed simultaneously.

### A. Applicable Legal Standard

The parties' Motions raise issues under Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. Generally, courts disfavor resolving issues involving contract interpretation at the motion to dismiss stage. *See Assa Compañia De Seguros, S.A. v. Codotrans, Inc.*, 15 F.Supp.3d 1271, 1275–76 (S.D.Fla.2014) (noting that "[a] court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment"

(quoting *McKissack v. Swire Pac. Holdings, Inc.*, 2011 WL 1233370, at *3 (S.D.Fla. Mar. 31, 2011))); *see also Geter v. Galardi S. Enterprises, Inc.*, 43 F.Supp.3d 1322, 1328 (S.D.Fla.2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted); *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, 2011 WL 6024572, at *8 (S.D.Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a[ ] motion to dismiss."). The issue of whether Evanston has a duty to defend, however, is an exception in this case as there are no facts in dispute.

The duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442–43 (Fla. 2005) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla.1998)) (further citations omitted). Thus, this duty is determined solely from the allegations contained in the underlying complaint and is triggered "even if the allegations in the complaint are factually incorrect or meritless." *Id.* (noting that even "[w]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend") (citations omitted); *see also Scottsdale Ins. Co. v. GFM Operations, Inc.*, 789 F.Supp.2d 1278, 1284 (S.D.Fla.2011) (citing *Higgins v. State Farm Fire and Casualty Co.*, 894 So.2d 5, 9–10 (Fla.2004)); *Smithers Const., Inc. v. Bituminous Cas. Corp.*, 563 F.Supp.2d 1345, 1348–49 (S.D.Fla. 2008) ("[T]he insurer must defend even if the allegations in the complaint are factually incorrect or meritless.") (citation omit-

ted). Here, Evanston's duty to defend is readily determinable based on the allegations in the Underlying Litigation and the Policy's language. There is no conflict which would obviate this Court's ability to resolve the dispute at this stage and, indeed, the parties raise none. The dispute focuses on the legal consequences of facts agreed to by the parties. Accordingly, the Court treats the pending Motions as one, all governed by Rule 56.

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, among other things, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir.2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Further, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir.1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D.Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must

not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1993))).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir.2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 Fed.Appx. 819, 825 (11th Cir.2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

**B. Standards Governing Insurance Contract Interpretation in Florida**

 In determining coverage under an insurance policy, courts look at the policy in its entirety and are required to give "every provision its full meaning and operative effect." *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir.2004) (internal quotation marks omitted). Thus, when construing a policy's terms, "the pertinent provisions should be read *in pari materia*." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007) (quoting *CTC Dev. Corp.*, 720 So.2d at 1074). A court's inquiry begins with "the plain language of the policy, as bargained for by the parties." *Id.* (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). Stated differently, insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th

Cir.2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla.2005)); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla.2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." (citation omitted)). The unambiguous language of the policy is controlling; however, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Id.*

"[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 Fed.Appx. 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So.2d 963, 965 (Fla. 1976)). In the same vein, policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Hartnett v. Southern Ins. Co.*, 181 So.2d 524, 528 (Fla.1965)). Accordingly, exclusionary clauses restricting the insured's coverage generally disfavored. *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir.2006) (citing *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1359 (M.D.Fla.2001)). The burden falls on the insurer to prove that an exclusionary clause precludes coverage, and it must do so by "demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Id.* (citing *Northland*, at 1359); *see also U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1065 (Fla.1983) ("Non-insurability is a defensive matter, with the burden resting on the insurer.").

## C. Evanston's Duty to Defend

As noted, an insurer's duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage," regardless of the true facts and merits of the underlying case. *Jones*, 908 So.2d at 442–43 (citation omitted). "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Id.* at 443 (citing *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st DCA 1992)).

Evanston argues that the Professional Liability Exclusion and the Designated Premises Exclusion bar coverage for the conduct alleged in the Underlying Litigation. Guided by the principles set forth above, the Court finds that the Underlying Litigation is covered.

### i. Professional Liability Exclusion

The Professional Liability Exclusion provides that the Policy does not apply to liability "arising out of the rendering of or failure to render professional services or any error or omission, malpractice, or mistake of a professional nature committed or alleged to have been committed by or on your behalf." Policy at 23. The Exclusion also provides that it applies to "[h]iring, placement, employment, training, supervision, or retention of a person for whom any insured is or ever was legally responsible." *Id.* Evanston first asserts that Raphael "was undisputedly performing professional services." *See* Response to MTD, ECF No. [42] at 11. In the alternative, Evanston falls back on the supplemental provision contained in the Professional Liability Exclusion which precludes coverage for hiring-related decisions, arguing that Yellow Cab's liability for Rafael is premised upon his hiring and/or placement, and, thus, falls outside the coverage zone. *See id.* at 11–12; *see also* Evanston MSJ, ECF No. [50] at 14. Neither contention is persuasive. A straightforward

reading of the Professional Liability Exclusion reveals that it is inapplicable.

 Fortunately, while the term "professional" is not defined by the Policy, the Eleventh Circuit has provided guidance on the matter. In *Evanston Ins. Co. v. The Budget Grp., Inc.,* No. 4:04 CV 400 SMP/AK, 2006 WL 839173 (N.D.Fla. Mar. 30, 2006), Evanston asserted that a rental car service fell within the ambit of a professional service under the policy in question. *Id.* at \*3. Defining a professional service as one "that requires specialized knowledge and calls for mental rather than physical skills," the court held that renting vehicles to the public was not a professional service "[b]y any stretch of the term." *Id.* (citing 7A Appleman, Insurance Law and Practice § 4504.01 (rev. ed. 1979 & Supp.1990)). A "professional," as the term is colloquially used, refers to "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." *See Aerothrust Corp. v. Granada Ins. Co.,* 904 So.2d 470, 472 (Fla. 3d DCA 2005) (quoting Black's Law Dictionary 1246 (8th ed.2004)). In affirming the district court's decision, the Eleventh Circuit specifically noted that professional liability exclusions have typically been applied in the context of learned professions, such as "attorneys, psychiatrists, and medical technicians," but have never been applied in the context of auto-rentals. *Evanston Ins. Co. v. Budget Grp. Inc.,* 199 Fed.Appx. 867, 868 (11th Cir.2006). Similarly, here, Evanston presents no authority to support its position that a taxi driver is contained within the realm of "professionals," as the term is customarily defined in this context. *See generally Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So.2d 176, 180 (Fla. 4th DCA 1997) ("Where a critical

term is not defined in an exclusionary clause of the policy, it will be liberally construed in favor of an insured." (citing *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1247 n. 3 (Fla.1986))). While the operation of a taxicab is admittedly an important and integral service to society, it is neither a learned profession nor one that requires a high level of training. Thus, the Court rejects the contention that the Underlying Litigation is subsumed within the Professional Liability Exclusion contained in the Policy.

 Evanston's next argument is equally unpersuasive. The assertion that "[n]othing in the Professional Liability Exclusion limits the exclusion only to professional services" is, as Yellow Cab puts it, disingenuous. The provision is quite literally titled an "Absolute *Professional* Liability Exclusion," and begins with the restriction that the insurance does not apply to liability "arising out of the rendering of or failure to render *professional services:*" Policy at 23 (emphasis supplied). The relevant addendum clause in the Exclusion applying the Exclusion to the "hiring, placement, employment, training, supervision, or retention" of employees, does not negate this conclusion. Evanston beseeches the Court to read the clause regarding hiring in absolute isolation, as if it were its own exclusion. The Court declines to do so. An insurance policy's provisions "should be read *in pari materia.*" *U.S. Fire Ins. Co.,* 979 So.2d at 877 (quoting *CTC Dev. Corp.,* 720 So.2d at 1074). The unambiguous language of the Exclusion simply notes that the *professional* exclusion also applies to the hiring of the *professional,* not simply *any* individual that the Insureds may be responsible for.[1] *See*

---

1. At an absolute minimum, the Professional Liability Exclusion is ambiguous and the Court construes the ambiguity against Evanston and in favor of the Insureds. *See Ernie*

*Haire Ford, Inc. v. Universal Underwriters Ins. Co.,* 331 Fed.Appx. 640, 645 (11th Cir.2009) (citing *Garcia v. Federal Ins. Co.,* 969 So.2d 288, 291 (Fla.2007).

Policy at 23. Accordingly, the Professional Liability Exclusion in the Policy does not vitiate Evanston's obligation to cover the matters raised in the Underlying Litigation.

### ii. Designated Premises Exclusion

The Designated Premises Exclusion is not so clearly inapplicable. For purposes of clarity, it is fit to reiterate the Exclusion in full:

> This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:
>
> 1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or
>
> 2. The project shown in the Schedule (or Declarations).

Policy at 56. In short, Evanston asserts that this Exclusion bars coverage because the vacant parking lot off the 100 block of Northeast Third Avenue in Fort Lauderdale, Florida is not contained in the Policy's Schedule of Locations. *See id.* at 15–17; 73–75, 77–78, 81, 83, 87, 89, 92–93. There is no dispute as to this fact; the premises on which M.D. was assaulted are not listed in the Policy. Nevertheless, Yellow Cab and M.D. quarrel with Evanston over the application of this provision, declaring that Evanston's construction of the Policy in this regard is an unabashed attempt to convert this commercial general liability policy into a premises liability policy. Yellow Cab MSJ, ECF No. [44] at 8–12, M.D. MTD, ECF No. [33] at 11–16.

■ "The primary purpose of a commercial general liability insurance policy . . . is to protect businesses 'from third-party liability incurred as a result of that company's business operations.'" *Capitol Specialty Ins. Corp. v. Royal Crane, LLC,* No. 14–CIV–60815, 2015 WL 859073, at *5 (S.D.Fla. Feb. 27, 2015) (quoting *JB Recycling Group, Inc. v. Landmark American*

*Ins. Co.,* 2012 WL 3516490, at *5 (S.D.Fla. Aug.15, 2012)). Any attempt to modify a commercial general liability policy so that coverage is limited to liabilities incurred at specific locations can succeed only if the modifying language is "clear and unequivocal." *Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc.,* 771 F.Supp.2d 1336, 1343 (S.D.Fla.2011) *aff'd,* 450 Fed.Appx. 792 (11th Cir.2011); *see also Szczeklik v. Markel Int'l Ins. Co.,* 942 F.Supp.2d 1254, 1262 (M.D.Fla.2013) *aff'd,* 546 Fed.Appx. 926 (11th Cir.2013) ("Under Florida law, language used to convert a Commercial General Liability Policy to a premises liability policy, through a designated premises endorsement, must be clear and unequivocal.") (citation omitted). Here, the Policy contains no clear and unequivocal declaration that it is intended to be a premises liability policy. To the contrary, the Policy is rife with conflicting pronouncements, which create sufficient ambiguity to construe the Policy in favor of coverage.

■ The Court commences its inquiry with the language of the Policy itself. The Policy provides that it shall apply to " 'bodily injury,' 'property damage,' 'personal and advertising injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule (or Declarations)." Policy at 56. Florida courts have recognized that the term "arising out of" is generally "broader in meaning than the term 'caused by' " and is construed to mean "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So.2d 963, 965 (Fla. 5th DCA 1996) (citing *National Indemnity Co. v. Corbo,* 248 So.2d 238 (Fla. 3d DCA 1971)); *Chabad House,* 771 F.Supp.2d at 1340 ("As correctly noted by the Magistrate Judge, the term 'arising out of' is unambiguous under Florida law; it means 'having its origin in,' 'growing out of,' 'flow-

ing from,' 'incident to' or 'having a connection with.' ") (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,* 913 So.2d 528, 539 (Fla.2005)) (further citations omitted). Yellow Cab's taxi operation is reasonably and logically construed as "arising out of" certain locations contained in the Schedule of Locations.[2] Yet, this is not the critical reason why the Designated Premises Exclusion falls short of obviating Evanston's duty to defend.

The Policy, when read as a whole, is ambiguous in several respects pertinent to the Designated Premises Exclusion. First, the Exclusion makes no reference as to which part of the policy it modifies. *Compare* Policy at 56 *with* Policy at 23 (stating that "[t]his endorsement modifies insurance provided under the following" parts, including "Commercial General Liability Coverage Form," "Liquor Liability Coverage Form," and "Businessowners Coverage Form"); *see Chabad House,* 771 F.Supp.2d at 1343–44 ("First and most problematic, the Limitation of Coverage to Designated Premises or Project does not state specifically which Commercial General Liability Coverage Part is modifies.... In the presence of policy language to the contrary (e.g. designated coverage territory) the designated premises endorsement's lack of clarity is remarkable.").[3] Second, the limitation in the Exclusion appears to conflict with the Policy's coverage territory. The insurance clearly applies to bodily

injury and property damage "caused by an 'occurrence' that takes place in the 'coverage territory.' " *See* Policy at 26. "Coverage Territory" is defined as the "United States of America ... Puerto Rico, and Canada." *Id.* at 35. The Scheduled Locations Exclusion does not seek to modify this definition. In fact, it expressly leaves the definition intact with the Exclusion's disclaimer that "[a]ll other terms and conditions remain unchanged." *Id.* at 56. Thus, the Exclusion, a separate provision limiting coverage to specific premises, appears in conflict with such an expansive coverage territory. The Policy's coverage for "advertising injury," a necessarily transitive injury occurring off-premises, injects further ambiguity. *Id.* at 30. Advertising injuries are defined as, *inter alia,* "malicious prosecution," "oral or written publication ... of material that slanders or libels a person" or "that violates a person's right of privacy," and copyright infringement. *Id.* at 37. As noted, these injuries, by definition, are not limited to specific locations, thereby conflicting with a premises endorsement limiting liability exclusively to designated premises. Thus, while Evanston's construction of the policy is one for premises liability, these provisions encompassing liability away from such premises not only conflict with that appraisal but, also, raise sufficient discord to find ambiguity as to the Designated Premises Exclusion.[4]

---

**2.** Contrary to Evanston's contention, the sexual assault of M.D. does bear a causal nexus to the operation of the scheduled premises. If not for Yellow Cab's business of picking up passengers, which was plainly operated out of the scheduled locations, Rafael would not have picked up M.D. and M.D. would not have been subjected to such traumatic events.

**3.** Evanston's argument that the Designated Premises Exclusion clearly applies to the entire Policy because it states, "This Endorsement Changes the Policy," is unconvincing. Not only is such language not within the

language of the Exclusion itself, but it appears in every endorsement, including those that state with specificity the coverage the particular endorsement seeks to modify. Therefore, this language does not clearly resolve any ambiguity with respect to the application of the Exclusion at issue.

**4.** The premium amounts do little to resolve these ambiguities as they are not a conspicuous statement of conversion. Although the inclusion of a per-square-foot premium calculation is indicative of a premises policy, see *Szczeklik,* at 1263 n. 13 (citations omitted),

This disharmony results in the inescapable conclusion that the Policy is ambiguous. Indeed, in *Chabad House,* the Court explicitly found that similar conflicting provisions created confusion and ambiguity, precluding a finding that a designated premises endorsement would bar coverage of an injury occurring off premises. *See* 771 F.Supp.2d at 1343–44 ("As in *Southeast Farms [v. Auto–Owners Ins. Co.,* 714 So.2d 509, 512 (Fla. 5th DCA 1998) ], the ambiguities resulting from the arguably untethered designated premises endorsement and the contradicting language elsewhere in the policy must be construed against the insurer."). The question presented is not, as Evanston states, whether Yellow Cab was "on notice" that coverage was limited to each of the designated premises; the question is whether the Policy is unambiguous. The Court holds in line with *Chabad House* and finds that the Policy contains various ambiguities. In light of these ambiguities, the Policy must be construed against Evanston in favor of coverage. *See Evanston,* 199 Fed.Appx. at 868 (noting that insurance policies "are to be construed most strongly against the insurer and liberally in favor of the insured") (citation omitted). In this case, the ambiguities could have been resolved with ease: state that the Policy is what it purports to be, a premises liability policy. As the drafter of the Policy, Evanston cannot hide behind mismatched and ambiguous provisions in order to deny its obligation to defend.

Even assuming that the Policy was unambiguous, Evanston has failed to demonstrate that the Designated Premises Exclusion precludes coverage as is its burden. *See Beaver,* 466 F.3d at 1296 (citation

omitted); *Szczeklik,* 942 F.Supp.2d 1254 (M.D.Fla.2013) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely within the policy exclusion and are subject to no other reasonable interpretation." (citing *Travelers Indem. Co. v. PCR Inc.,* 889 So.2d 779, 785 (Fla.2004))). On this point, *Szczeklik v. Markel Int'l Ins. Co.,* 942 F.Supp.2d 1254 (M.D.Fla.2013) *aff'd,* 546 Fed.Appx. 926 (11th Cir.2013) helps to illuminate the issue. The underlying litigation in *Szczeklik* involved an accident caused by the insured far from the insured's premises. *See id.* at 1257–58. The insured, a distributor of a testing device used to measure friction on runways, assembled a "split" rim and transported the completed rim to a company for tire mounting. *Id.* The company's employee mounted the tire on the rim and began to inflate it when the two halves of the rim explosively separated causing serious injury. *Id.* The employee sued the insured as a result of his injuries. *Id.* When asked to defend the suit, the insurer disputed its duty to defend based on an exclusion akin to the one here, which limited liability to the "ownership, maintenance or use of the premises shown in the [Declarations] and operations necessary or incidental to those premises." *Id.* at 1258.

The Middle District of Florida ruled against the insurer, holding that the exclusion did not limit coverage to liabilities actually incurred at a listed location; rather, it limited coverage to liabilities that were related to events originating at one of the listed locations. *Id.* at 1261–62. More relevant to this Court's current inquiry,

there is no indication that this, alone, is sufficient to convert a policy which purports to be a commercial general liability policy to one for premises liability. Further, the declaration of premiums does not manifest a clear and unequivocal intention to convert the poli-

cy. *See Chabad House,* at 1343; *Szczeklik,* at 1262. The classifications are contained in a declarations page entitled "Commercial General Liability Coverage Part Declarations," clearly labeling the coverage as one for commercial general liability rather than premises.

the *Szczeklik* court found that the endorsement seeking to limit coverage to certain locations was "[a]t best, . . . a flawed attempt to convert what purports on its face to be a commercial general liability policy into a premises liability policy." *Id.* at 1262. Because there was no clear and unequivocal indication that the parties intended for the endorsement in question to convert the policy from a commercial general liability policy to a premises liability policy, the court declined to treat it as such. *Id.* at 1262–63. While the policy language and facts of *Szczeklik* are distinguishable in some respects, it is instructive as to the issue of coverage conversion. Here, like in *Szczeklik*, the Policy is devoid of a provision signifying a conversion to a premises liability policy. The Policy here is, on its face, a commercial general liability policy and must be treated as such absent such indisputable language.

Evanston relies on *Union Am. Ins. Co. v. Haitian Refugee Ctr./Sant Refijie Ayisyin, Inc.*, 858 So.2d 1076 (Fla. 3d DCA 2003) and the unreported case of *First Specialty Ins. Co. v. Southern Trans., Inc.*, Case No. 2:06–cv–02199 (W.D.Tenn., Apr. 27, 2007),[5] in support of the contention that the Designated Premises Exclusion effectively indicates that the Policy is one solely for premises liability. *Union American* and *First Specialty* are unpersuasive. In *Union American*, a shooting death occurred at a rally organized by the insured at a location not included in the location schedule. *Id.* at 1077–78. Like the endorsement in *Szczeklik*, the language was broad, providing coverage for "bodily injury . . . arising out of [t]he ownership, maintenance or use of the premises shown in the [s]chedule and operations necessary or incidental to those premises." *Id.* The court found that the policy did not provide coverage, reasoning that the endorsement specifically limited liability to operations

incidental to scheduled "premises," not to the insured's "business," as the lower court had determined. *Id.* (finding that the lower court had rewritten to policy by substituting the word "business" for the word "premises"). Similarly, in *First Specialty*, the underlying injury was sustained off-site: a taxi driver was assaulted and killed by a passenger. *See* ECF No. [42–2] at 1–2. Suing under a theory of negligence, the estate of the driver asserted that the taxi company failed to provide a safe working environment, failed to provide safety equipment, and failed to warn its drivers that this passenger had previously attacked drivers. *Id.* at 2. The insurer denied its duty to defend, citing, among other things, an exclusion mirroring the Designated Premises Exclusion in the instant case. *Id.* at 4. Relying on *Union American*, the Tennessee court rejected the argument that a sufficient nexus existed between the premises listed in the policy and the driver's death, stating that the nexus between the insured's alleged failure to act was only "hypothetical" and, therefore, was insufficient to bring the claim within the ambit of the scheduled locations exclusion. *Id.* at 5.

Even if this Court were to accept the purportedly factual similarities between *Union American* and *First Specialty*, these decisions seem to conflict with repeated declarations from courts in this Circuit, which have required "clear and unequivocal" language in order to convert a commercial general liability policy to a premises liability policy or owner's, landlord's and tenant's policy. *See Chabad House*, 771 F.Supp.2d at 1343 *aff'd*, 450 Fed.Appx. 792; *Szczeklik*, 942 F.Supp.2d at 1262 *aff'd*, 546 Fed.Appx. 926. For instance, in *Union American*, notwithstanding the fact that the jacket of the policy designated it a "commercial lines

---

5. Attached at ECF No. [42–2].

policy," the court quickly, and without discussion or citation, found that the endorsement in question effectively "converted the policy into the equivalent of a premises or owner's, landlord's and tenant's [policy]." *Union American,* at 1078 n. 1. In *First Specialty,* the Western District of Tennessee presented no discussion on the point. Absent "clear and unequivocal" language which seeks to convert this "Commercial General Liability Policy," see Policy at 6, to one for premises liability, the Court will not do so. *See Chabad House,* at 1343; *Szczeklik,* at 1262.

For the foregoing reasons, the Court finds that Evanston has failed to demonstrate that the Designated Premises Exclusion is applicable. Consequently, Evanston is obligated to defend the Insureds in the Underlying Litigation.

### D. Evanston's Duty to Indemnify

 . "The duty to indemnify is separate and distinct from the duty to defend." *IDC Const., LLC. v. Admiral Ins. Co.,* 339 F.Supp.2d 1342, 1349 (S.D.Fla. 2004) (citations omitted). This duty is predicated upon a final judgment, settlement, or other final resolution of the underlying claims. *Id.* (citation omitted). Accordingly, it is axiomatic that "an insurer['s] duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Smithers Const., Inc. v. Bituminous Cas. Corp.,* 563 F.Supp.2d 1345, 1348 (S.D.Fla.2008) (quoting *Atl. Cas. Ins. Co. v. GMC Concrete Co.,* No. CIV.A. 07–0563WSB, 2007 WL 4335499, at *2 (S.D.Ala. Dec. 7, 2007) and citing *Southern Coatings, Inc. v. Century Sur. Co.,* 07–80558–CIV (PAS), 2008 WL 954178, at *4 (S.D.Fla.2008)) (further citations omitted); *see also Am. Nat. Fire Ins. Co. v. M/V SEABOARD VICTORY,* No. 08–21811–CIV, 2009 WL 812024, at *1 (S.D.Fla. Mar. 17, 2009) ("It is well-settled, however, that "[b]ecause an insurer's duty

to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." (quoting *Northland Casualty Co. v. HBE Corp.,* 160 F.Supp.2d 1348, 1360 (M.D.Fla. 2001))); *IDC Const.,* 339 F.Supp.2d at 1349 ( "An insurer's duty to indemnify is dependent on the outcome of a case, therefore any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.") (citation omitted); *Evanston Ins. Co.,* 2006 WL 839173, at *2 *aff'd* 199 Fed.Appx. 867 ("The duty to indemnify arises only after a final determination is made based on the actual facts of the incident that a claim is covered by the policy.") (citation omitted); *Colony Ins. Co. v. Barnes,* 410 F.Supp.2d 1137, 1143 (N.D.Fla.2005) ("The duty to indemnify, unlike the duty to defend, turns on the actual facts, not the facts as alleged in the complaint."). Additionally, "[c]onsiderations of comity, federalism and judicial economy all favor letting the state court action proceed unaffected by any rulings on indemnity." *S. Coatings, Inc. v. Century Sur. Co.,* No. 07–80558–CIV, 2008 WL 954178, at *5 (S.D.Fla. Apr. 8, 2008) (citing *Ameritas Variable Life Insur. Co. v. Roach,* 411 F.3d 1328, 1331 (11th Cir. 2005)).

 Here, there has been no resolution of the Underlying Litigation. Accordingly, a determination of Evanston's duty to indemnify is premature and the proceedings are stayed as to that issue. *See Great Am. Fid. Ins. Co. v. JWR Const. Servs., Inc.,* 882 F.Supp.2d 1340, 1363 (S.D.Fla.2012) (rendering judgment as a matter of law regarding the duty to defend and staying proceedings as to the issue of indemnification until presented with an underlying judgment).

**1154**

### III. Conclusion

Based on the foregoing, it is evident that Evanston has a duty to defend the Insureds in the Underlying Litigation and any resolution of the duty to indemnify is premature. Therefore, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant M.D.'s Motion to Dismiss and Stay Remainder of Action, ECF No. [33], is **GRANTED**.

2. Defendants, Gaddis Corporation and B & L Service, Inc. d/b/a Yellow Cab of Broward's Motion for Summary Judgment, **ECF No. [44]**, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted with respect to the duty to defend but denied regarding the duty to indemnify.

3. Plaintiff Evanston Insurance Company's Cross–Motion for Final Summary Judgment, **ECF No. [53]**, is **DENIED**.

4. This matter is **STAYED** as to Plaintiff Evanston Insurance Company's obligation to indemnify its Insureds in the Underlying Litigation.

5. The Clerk is directed to **CLOSE** this case for **ADMINISTRATIVE PURPOSES**. Either side may re-open this case when the issue of a duty to indemnity becomes ripe.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 31st day of August, 2015.